**CROP-MAKER SOIL SERVICES, INC.,**
Plaintiff-Appellant,

v.

**FAIRMOUNT STATE BANK,**
Defendant-Appellee.

No. 88-1931.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1988.

Decided Aug. 7, 1989.

C. David Peebles, Daniel J. Skekloff, Peebles, Thompson, Rogers & Skekloff, Fort Wayne, Ind., for plaintiff-appellant.

Malcolm C. Mallette, Krieg, Devault & Alexander, Indianapolis, Ind., for defendant-appellee.

Before COFFEY, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Crop-Maker Soil Services, Inc., (Crop-Maker) sued Fairmount State Bank (Fairmount Bank), claiming that Fairmount Bank defrauded Crop-Maker by omission and through misleading release of information. A bankruptcy proceeding originally included both Fairmount Bank and Crop-Maker as creditors. The district court granted Fairmount Bank's motion for summary judgment on the ground that the matters raised in this action are barred by res judicata due to the earlier bankruptcy proceedings in that court. Crop-Maker on appeal maintains that the bankruptcy case concerned different legal theories and did not turn on the same core of facts as this case. We affirm.

I.

THE BANKRUPTCY PROCEEDINGS

The district court originally adjudicated bankruptcy proceedings including Cecil Richard Manwell and Winifred Madge Manwell (doing business as Manwell Farms) and of Manwell Foods, Inc. In 1983 the debtors (the Manwells) applied for a loan from Fairmount Bank, to be secured by

---

their 1984 crop and pack of canned tomatoes. On May 15, 1984, the court approved a secured loan from Fairmount Bank as administrator securing Fairmount Bank and other participating institutions. This May 15 order was produced by an agreement among the Manwells, Manwell Foods, Inc., Eastern Indiana Production Credit Association (EIPCA), Phoenix Mutual Life Insurance Company, and defendant. EIPCA approved this agreement, although at that point it was not intended to be a loan participant. The agreement afforded Fairmount Bank and the participating institutions a first lien on the 1984 crops and tomato pack to secure the total loan of $1,170,000. Fairmount Bank filed financing statements with the Indiana Secretary of State on May 14, 1984, and with the Grant County Recorder on May 16, 1984, showing Fairmount Bank as administrator and the Manwells as debtors.

On July 2, 1984, the court entered an order amending this financing agreement and making EIPCA a participant. In anticipation of EIPCA becoming a participant, on June 26, 1984, Fairmount Bank, as secured party, filed additional financing statements with the Secretary of State and Grant County Recorder.

On June 27, 1984, Crop–Maker requested the Grant County Recorder to make a formal search for UCC financing statements under the names of Manwell and Manwell Farms. The search indicated that financing statements were on file for both Fairmount Bank and EIPCA. Although Crop–Maker was on notice of the lien on the crops by Fairmount Bank and the other participating lenders, it nevertheless filed its own financing statement with respect to Manwell Foods and Manwell Farms in Grant County and later with the Secretary of State. In October 1984, District Judge Lee (who was originally adjudicating the bankruptcy proceedings which had been transferred from the bankruptcy court)

granted the Manwells' petition for authority to borrow additional funds from Crop–Maker. He also authorized a security interest to Crop–Maker, subordinate to the security interest of Fairmount Bank as administrator for the participating Banks.

## II.

### THE *SPEEDLING* PROCEEDINGS

In December of 1984, Speedling Inc., a supplier of tomato seedlings, sued Manwell Foods for balances due. This *Speedling* litigation was one of the Manwells' bankruptcy proceedings transferred to the district court. Speedling also attacked the 1984 secured lending agreement. Crop–Maker participated in hearings and related matters in the *Speedling* proceedings. In February 1985 Crop–Maker, the Manwells, EIPCA, Speedling, the First Bank of Whiting, and Fairmount Bank stipulated to an agreed order in the bankruptcy court under which proceeds of the 1984 pack of foods would be held in escrow until all claims to the escrow had been asserted by intervention in the adversary proceedings and had been. decided.[1]

On April 8, 1985, the district court required any nonparties wishing to assert any claim or defense relating to the proceeds of tomatoes grown or processed by the Manwells in 1984 to file a motion to intervene in the *Speedling* proceedings. Crop–Maker had agreed to assert any claims concerning the 1984 pack and secured lending by intervening in the *Speedling* proceedings on or before April 26, 1985. But Crop–Maker failed to intervene at any juncture in the *Speedling* litigation. When the *Speedling* litigation was settled through withdrawal of Speedling's claims, Crop–Maker at first objected to that settlement by the trustee, but later withdrew the objection. The bankruptcy court granted Crop–Maker's withdrawal motion.

1. In relevant part the February 13, 1985, agreed order provides:
   The Warehouse Receipt Escrow shall be held until the Speedling Claim, the EIPCA claim to a subordinate security interest under paragraph 1.2 of the Loan Agreement, the Crop–

Maker claim, and the Fairmount Claim, and all other claims to such Escrow asserted by intervention in the Adversary Proceeding have been finally adjudicated or settled and the relative priorities of all such claims are finally adjudicated or settled.

## III.

### DISTRICT COURT PROCEEDINGS

On February 27, 1987, the *Speedling* proceeding was dismissed with prejudice by the district court. But Crop–Maker filed this suit against Fairmount Bank in district court on August 28, 1987. Crop–Maker's complaint alleges that during May 1984 Crop–Maker contacted Fairmount Bank regarding extension of credit for the Manwell operations. Crop–Maker alleges that it stated to Fairmount Bank its intent to obtain a first lien on the 1984 Manwell crop/pack, but that Fairmount Bank withheld the fact that it and others then were engaged in obtaining the first lien on the Manwell crops. Crop–Maker claims that this omission plus Fairmount Bank's selective release of information constituted fraud and that by the June 27, 1984, formal lien search Crop–Maker already had been damaged. Fairmount Bank moved for either dismissal or summary judgment. The prior bankruptcy litigation had proceeded before Judge Lee, the same district judge who heard the motion for summary judgment now on appeal, so he was very familiar with the record of those prior proceedings.

The district court concluded that in the *Speedling* proceeding Crop–Maker could have asserted the facts it now alleges to prove its priority over all secured and unsecured creditors, by demonstrating that Fairmount Bank had misled Crop–Maker to obtain unfair advantage. Judge Lee emphasized that the February 13, 1985, agreed order provided that the proceeds of the 1984 pack of foods were to be held in escrow until every claim to the escrow had been asserted via intervention in the adversary proceedings and then adjudicated. Judge Lee found that Fairmount Bank was entitled to judgment because the claim ought to have been raised in the bankruptcy proceedings. On April 13, 1988, the district court granted summary judgment to Fairmount Bank under the doctrine of res judicata.

## IV.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides for summary judgment to be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file plus any affidavits show no genuine material fact issue, and demonstrate the moving party is entitled to judgment as a matter of law. The primary goal of Rule 56 is isolation and disposal of factually unsupported claims or defenses. *Goka v. Babbitt*, 862 F.2d 646, 650 (7th Cir.1988). The motion for summary judgment is granted only if the instruments offered the court fail to show a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The simple assertion of a factual dispute cannot defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Review of a district court grant of summary judgment takes every reasonable factual inference in favor of the movant's opposing party. *In re Wildman*, 859 F.2d 553, 556 (7th Cir. 1988).

## V.

### ANALYSIS

Generally, the res judicata doctrine serves the interests of judicial economy and finality in disposing disputes by barring both the parties to a judgment and their privies from relitigating the identical cause of action. *Durhan v. Neopolitan*, 875 F.2d 91, 93–94 (7th Cir.1989). Res judicata thus precludes Crop–Maker from "splitting" its claim. Different causes of action deriving from the same incident are regarded as a single claim in recognition of the economies in combining the various theories of liability in a single suit.

Res judicata ensures the finality of decisions. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." (Citation omitted.) Res judicata prevents litigation of all grounds for, or defenses to, recovery

that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. (Citations omitted.) Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

The preclusive effect of the federal res judicata doctrine bars not only those issues which actually were decided in a prior action but also any issues which could have been raised. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir.1988). This court will follow the traditional doctrine of res judicata if the elements of res judicata are met. *Id.* at 1365. Those elements are (1) a final judgment on the merits in a prior action; (2) the identity of the cause of action in both the prior and subsequent suits; and (3) the identity of parties or privies in these suits. *Id.* at 1364. This is a rule of fundamental public policy, well-established in the public interests that there be an end to litigation. *Id.* at 1364–65.

The doctrine of res judicata applies in the bankruptcy context. *Cf. Felsen*, 442 U.S. at 132, 138, 99 S.Ct. at 2204, 2212. Public policy supports res judicata here because most bankruptcies include disputes between creditors over who gets paid. Sometimes the results are harsh and courts seem to focus upon technicalities. *In the Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1019 (7th Cir.1988). But Crop–Maker brought on the result. It did not file financing statements until after it had advanced credit and a prior lien had been filed. It chose not to intervene or otherwise participate in the ongoing proceedings. These decisions, whether strategic or inadvertent, will not enable Crop–Maker to escape the res judicata net.

This court applied the res judicata doctrine in *Secon Service System v. St. Joseph Bank & Trust*, 855 F.2d 406 (7th Cir.1988). The St. Joseph Bank & Trust Company (St. Joseph Bank) had advanced funds to enable a holding company to buy out Indiana Refrigerator Lines, Inc. When Indiana Refrigerator Lines (IRL) ran into difficulty, with substantial outstanding indebtedness to St. Joseph Bank, the holding company and St. Joseph Bank found a buyer in F. Ralph Nogg. *Id.* at 407. Nogg opened negotiations on IRL's behalf with Yale Express, Inc., and its wholly-owned subsidiary Secon Service System, Inc., corporations operating as debtors in-possession under Chapter 11, to purchase ICC operating authorities from Secon. *Id.* at 407–08. The purchase agreement was approved by the bankruptcy court and signed by June 27, 1980. *Id.* at 408.

St. Joseph Bank filed a state court action on January 16, 1981, to enforce its security interest in IRL's accounts receivable and other assets. The holding company in IRL responded by filing petitions for Chapter 11 reorganization. The bankruptcy court approved a plan terminating all claims of IRL's creditors whether based on alleged equitable subordination, fraudulent conveyance, preferential treatment, or invalidity of claims. *Id.*

Secon failed to appeal, instead filing a complaint in federal district court against St. Joseph Bank and several individual defendants. The district court granted summary judgment for the defendants. Secon had asserted that St. Joseph Bank had promoted fraudulent conveyances of funds from IRL to itself, breaching fiduciary duties to both Secon and IRL. This court held Secon's fraudulent conveyance claim an effort to relitigate an issue decided in the bankruptcy court. The bankruptcy court's final judgment on the merits barred relitigation of the identical claim between the identical parties. *Id.* at 409.

Secon insisted it was not an IRL creditor and therefore had not been a party in the bankruptcy proceeding. But this court found that Secon had been such a party since it had been a member of the creditors committee in that proceeding, had appeared by its counsel, and had styled itself a creditor of IRL in its objection to the plan approved by the bankruptcy court. *Id.* at 409–10.

Secon further contended that because IRL and St. Joseph Bank had been joint fraudfeasors Secon could choose whom to sue. This court was unpersuaded, given the level of assets IRL was seen still to have held when before the bankruptcy court. *Id.* at 410.

Finally, Secon argued that because St. Joseph Bank controlled IRL, St. Joseph Bank's misuse of its control breached its fiduciary duties to IRL's creditors. But this court determined that Secon's breach of fiduciary duty claim arose from the same core of operative facts as did its fraudulent conveyance claim. Secon had chosen not to press the fraudulent conveyance claim in the proper, earlier forum and so could not raise it thereafter. Secon surely could have asserted in the bankruptcy proceeding Secon's claims of fraud and breach of fiduciary duty as defenses to St. Joseph Bank's secured claims. Res judicata precludes negating rights established by a prior proceeding. But allowing Secon to raise its claims in positive form in the subsequent proceeding would indeed have nullified rights established by such a prior proceeding. The earlier judgment therefore precluded Secon's effort. *Id.*

Crop–Maker makes a claim very similar to the one that failed for Secon. Crop–Maker preferred to sue Fairmount Bank separately rather than to challenge the priority of its crop-pack lien in the bankruptcy proceeding or in the *Speedling* proceeding. Just as res judicata precluded Secon's bid for a second opportunity against St. Joseph Bank, so too it denies Crop–Maker a second chance to level its charges against Fairmount Bank.

The district court rendered a final judgment on the merits in the earlier action. And Crop–Maker and Fairmount Bank in February 1985 both stipulated to entry of an agreed order in district court under which proceeds of the 1984 pack of foods would be held in escrow until various claimants to the escrow, including Crop–Maker, had an opportunity to intervene and resolve any claims. As we explained in *Secon:* "Having chosen not to press its fraudulent conveyance claim in the proper forum, Se-

con cannot return to it here." *Id.* at 410. Crop–Maker here chose not to press its claims against Fairmount Bank in the bankruptcy forum and cannot now return to them: "This application of the doctrine of res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits." *Shaver,* 840 F.2d at 1365.

## VI.

## CONCLUSION

Crop–Maker's claim against Fairmount Bank could have been pressed in the *Speedling* proceeding. Instead, Crop–Maker abandoned that opportunity and chose to bid for another chance today. Res judicata, or claim preclusion, operates as a bar to litigants if there has been final judgment upon the merits in an earlier action, and there is an identity of the cause of action and of the parties in the two suits. *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). A prior suit will be conclusive not only as to those matters litigated, but also regarding any other admissible matter which could have been resolved. *Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1400 (7th Cir.1987).

Public policy supports res judicata generally, but in the bankruptcy context in particular. There obviously were practical reasons for Crop–Maker's choice of a separate suit in federal district court, rather than using the bankruptcy proceeding, as its forum for challenging Fairmount Bank's moves. As a general creditor struggling for scarce bankruptcy assets, Crop–Maker had limited chance of recovery. On the other hand, a fraud action against Fairmount Bank appeared far more promising. But that promising fraud option was properly foreclosed by res judicata because the bankruptcy court was the proper forum for Fairmount Bank to press its cause. The summary judgment by the district court was appropriate.

AFFIRMED.