**PATRICIA P., in her own behalf and as parent of Jacob P., Plaintiff,**

v.

**BOARD OF EDUCATION OF OAK PARK and River Forest High School District No. 200 and Illinois State Board of Education, Defendants.**

No. 97 C 5225.

United States District Court,
N.D. Illinois,
Eastern Division.

June 9, 1998.

Margie Best, Chicago, IL, for Plaintiff.

John A. Relias and Thomas Koutsouvas of Franczek Sullivan, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Patricia P. ("Patricia") and her son Jacob P. ("Jacob"), the latter a minor suing through his mother, bring this action against Board of Education of Oak Park and River Forest High School District No. 200 ("District") and the Illinois State Board of Education ("Board") pursuant to the Individuals with Disabilities Education Act ("IDEA," 20 U.S.C. §§ 1400–1420).[1] They seek reimbursement for the cost of Jacob's private schooling.

District has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. Although both District and Patricia have complied with this District Court's General Rule ("GR") 12(M) and 12(N) in factual terms,[2] Patricia's Memorandum in Opposition was not at all responsive to the contentions advanced in District's Memorandum of Law. Instead Patricia's counsel tendered a scanty (2 1/2 page) Memorandum that (in addition to asserting that genuine factual issues abounded in the GR 12(M) and 12(N) submissions) complained of the need to conduct discovery,[3] but that was totally silent on the substantive arguments made by District. Because this Court really has no responsibility to make Patricia's case for her, and because District's unopposed legal arguments appear to have compelling force, the Rule 56 motion may fairly be viewed as fully briefed and ready for decision. For the reasons stated in this memorandum opinion and order, District's motion is granted and this action is dismissed with prejudice.

### Summary Judgment Standards

Familiar Rule 56 principles impose on District the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)).

As with every summary judgment motion, this Court accepts nonmovant Patricia's version of any disputed facts. What follows then is a version of the facts culled from the parties' submissions, with any differences re-

---

**1.** All citations to IDEA provisions will simply take the form "Section ___," referring to the numbering in Title 20 rather than to IDEA's internal numbering.

**2.** GR 12(M) and (N) are designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to District's GR 12(M) statement as "D. 12(M) ¶ ___," with its responses to Patricia's statement of supplemental facts being cited "D. 12(M) R. ¶ ___." Patricia's GR 12(N) response and statement of supplemental facts are respectively cited "P. 12(N) ¶ ___" and "P. 12(N) Supp. ¶ ___."

**3.** To be sure, Section 1415(e)(2) does contemplate the possibility that additional evidence may be adduced at a party's request in the judicial

review of an IDEA administrative decision. But that must not be misread as authorizing the conversion of a conventional judicial review of an administrative decision, limited to the administrative record, into a de novo proceeding (*Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901–02 (7th Cir.1996); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472–73 (9th Cir. 1993), cited favorably in *Monticello*). Nothing urged by Patricia has identified infirmities in the administrative proceedings of the nature that *Monticello* or *Ojai* (quoting extensively from *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 790–91 (1st Cir.1984)) found might justify expansion of the administrative record. Hence Patricia's request in her Memorandum for a Rule 56(f) continuance is denied.

solved in Patricia's favor.[4] Other relevant facts, which fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

*Facts*

Jacob is an 18–year–old disabled child who is eligible for special educational and related services under IDEA (Complaint ¶ 3). This action stems from events that began the summer before Jacob was scheduled to enter Oak Park and River Forest High School ("Oak Park") as a freshman during the 1994–95 school year (D.12(M) ¶ 7).

On June 8, 1994, after having completed a case study evaluation of Jacob, staff from the elementary school district held a multi-disciplinary conference with District to develop an individualized education program ("IEP") for Jacob's freshman year (*id.* ¶ 12). Both school districts recommended placement in a behavior disorder resource program, coupled with 30 minutes per week of social work services (P. 12(N) ¶ 13).

Believing that the proposed placement would be inappropriate in light of Jacob's special needs, Patricia instead enrolled him in Fenwick High School ("Fenwick"), a private parochial school that had no formal special education behavior disorder programs (D.12(M) ¶ 15). Jacob spent the 1994–95 school year at Fenwick, during which time he received no special education services from District (P. 12(N) ¶ 16). Because of behavioral problems that he created in the second semester, Fenwick officials notified Patricia in May 1995 that Jacob would not be permitted to return for the following school year (D.12(M) ¶ 17).

On June 2, 1995 Patricia enrolled Jacob in District for the 1995–96 school year (P. 12(N) ¶ 20). Patricia simultaneously sent away for an application to the Elan School ("Elan"), a Board-approved residential special education school in Poland Spring, Maine (D.12(M) ¶ 18). She completed the Elan enrollment process a few weeks later and on July 17, 1995 placed Jacob at Elan, where he remained for the duration of high school (P.

12(N) ¶ 26). Jacob has never attended classes at Oak Park (*id.* ¶ 23).

In an effort to obtain reimbursement of the cost of her unilateral placement of Jacob at Elan, on July 25, 1995 Patricia requested a Level I due process hearing (see Section 1415(b)(2)) for a determination that Elan was an appropriate educational placement for Jacob (D.12(M) ¶ 30). In October 1995 District filed a motion to dismiss Patricia's request (*id.* ¶ 31). And on December 12, 1995 Hearing Officer Bonnie Simon ("Simon") granted that motion on the ground that Patricia's unilateral transfer deprived District of a reasonable opportunity to conduct its own case study evaluation (*id.* ¶¶ 32–33).

Rather than appealing that adverse determination, Patricia requested a second Level I due process hearing on January 2, 1996 (D.12(M) ¶¶ 35–37). District promptly sought dismissal of that second request, arguing that the doctrine of claim preclusion barred review (D.12(M) ¶ 38). Though Hearing Officer Keith E. Stearns ("Stearns") rejected that position (D.12(M) ¶ 39) and conducted a full hearing, he ultimately upheld District's actions on the merits and denied Patricia's request for reimbursement of the Elan tuition (*id.* ¶ 40).

Pursuant to Section 1415(c) the parties then cross-appealed that second Level I decision to a Level II reviewing officer, with Patricia seeking to overturn the adverse verdict and District once again objecting to the Stearns hearing on claim preclusion grounds (*id.* ¶ 41). On March 28, 1997 Level II reviewing officer Lisa Salkovitz Kohn ("Kohn") affirmed Stearns' determination that District did not commit any IDEA procedural violation and thus was not required to reimburse Patricia for the Elan tuition (*id.* ¶ 44). Dissatisfied with Kohn's determination, Patricia now seeks judicial review in this Court pursuant to Section 1415(e)(2).

*IDEA Standard of Review*

██ Section 1415(e)(2) prescribes the scope of and procedure for judicial review of administrative agency decisions under IDEA:

---

4. There is one important exception: Because Patricia's factual statements and responses to District's statements are to be credited only if sup-

ported by the corresponding record citations, this Court will not accept any unsupported statements or mischaracterizations of the record.

In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

*Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) teaches that the statutory provision should not be read as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Instead courts must accord "due weight" to the results of state administrative proceedings. To that end *Rowley, id.* at 206–07, 102 S.Ct. 3034 (footnotes omitted) has set out the dual aspect of judicial inquiry when a parent or guardian challenges the appropriateness of a disabled child's educational placement:

Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Heather S. v. State of Wis.,* 125 F.3d 1045, 1053 (7th Cir.1997) recently clarified a reviewing court's limited role in light of the due deference mandated by *Rowley:*

First we note that the "due weight" which the court must give to the hearings below is not to the testimony of witnesses or to the evidence—both of which the court must independently evaluate—but to the decisions of the hearing officers.

Mindful of that task, this opinion independently evaluates the evidence in the record (albeit with the reasonable pro-Patricia inferences appropriate in the Rule 56 context),

while viewing the hearing officers' decisions through a deferential lens.

### Statutory Framework[5]

IDEA provides federal monetary grants to States, which in turn provide funds to local school districts for assistance in educating disabled students. States that elect to participate in that grant program must have in place a policy that ensures "that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs" (Section 1400(c)).

In turn Section 1401(a)(18) defines "free appropriate public education" as comprising:

special education and related services that—

(A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency,

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

And as *Seattle Sch. Dist., No. 1 v. B.S.,* 82 F.3d 1493, 1500 (9th Cir.1996) (internal quotations omitted) has reemphasized:

An "appropriate" public education does not mean the absolutely best or "potential-maximizing" education for the individual child.... The states are obliged to provide [only] a basic floor of opportunity through a program individually designed to provide educational benefit to the handicapped child.

 To accomplish the Section 1400(c) objective, parents, teachers and local educational officials—and where appropriate the child himself—collaborate to design an IEP for each disabled child, whether in public or

---

**5.** Because the relevant dates here preceded the June 4, 1997 enactment of major IDEA amendments (now codified at Sections 1400–1487), this decision is based on the pre-amendment version

of the statute (see *Tucker v. Calloway County Bd. of Educ.,* 136 F.3d 495, 500–01 (6th Cir.1998)). All statutory citations and quotations are also stated in the pre-amendment form.

private school (Sections 1401(20), 1412(4), 1414(a)(5)). Such an IEP is the governing document for all educational decisions concerning the disabled child and must identify the special education and related services that are necessary to meet the student's special needs (see *Board of Educ. of Community High Sch. Dist. No. 218 v. Illinois State Bd. of Educ.,* 103 F.3d 545, 546 (7th Cir. 1996)). To protect the rights of the parents and child, IDEA contains an elaborate set of procedural safeguards, including notice to the parents and the opportunity for a hearing whenever there is a change in a child's educational placement (see Section 1415).

■■■■ IDEA distinguishes among three groups of disabled students: (1) those attending public schools, (2) those placed in private schools by local school districts and (3) those voluntarily enrolled in private school by their parents. With respect to public school students, school districts must *offer to provide* special education and related services at public expense (Sections 1412(1), 1412(2)(B) and 1412(4)). If the district is unable to provide the necessary services to the disabled student in a public school, it must then place the student in a private school that can address the student's needs at public expense (Section 1413(a)(4)(B)). By contrast, IDEA imposes somewhat different obligations regarding disabled children who are placed voluntarily in private schools. Because that describes Jacob's situation, this opinion focuses on those obligations.

Section 1413(a)(4)(A) requires states to "provid[e] for such children special education and related services" but qualifies that statutory obligation "to the extent consistent with the number and location of" such children in a state. That section's accompanying regulations, set out in 34 C.F.R.,[6] help clarify a school district's lesser obligation with respect to such disabled students.

6. Citations to those regulations will take the form "Reg. § —," omitting the "34 C.F.R." reference for convenience.

7. Though District's memoranda use the older term "res judicata" (as indicated at the outset of this opinion, Patricia says nothing at all on the subject), that usage is susceptible to confusion because of the potential double meaning of the "res judicata" label. This opinion conforms in-

■■■ Reg. § 300.403 provides that if a free appropriate public education is available to a student and the parents nonetheless voluntarily enroll their child in a private school, the school district is not obligated to pay for the cost of the student's education. But the district may still be required to "make services available to the child as provided" by other regulations enacted pursuant to IDEA. Thus Reg. § 300.452 prescribes:

> Each [local educational agency] shall provide special education and related services designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency.

And Reg. § 300.451 states:

> To the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services....

In combination the statutory and regulatory provisions thus afford educational agencies considerable discretion to determine the manner in which services are to be provided to disabled children voluntarily attending private schools.

As already stated, Patricia's voluntary placement of Jacob in Elan requires this Court to consider the application of IDEA in those terms. And its task in doing so is complicated by the fact that "the IDEA and its implementing regulations are amorphous in design and imprecise in message" ( *Cefalu v. East Baton Rouge Parish Sch. Bd.,* 103 F.3d 393, 397 (5th Cir.1997)).

### Claim Preclusion

■■■ As a threshold matter, District contends that the doctrine of claim preclusion[7]

stead to this Court's regular practice (following the United States Supreme Court's lead) (see *Baker v. General Motors Corp.,* — U.S. —, — n. 5, 118 S.Ct. 657, 664 n. 5, 139 L.Ed.2d 580 (1998) and *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)) of employing the more precise "claim preclusion" label, except perhaps in referring directly to cases that follow the older locution.

forecloses judicial review of Patricia's IDEA claim. Claim preclusion prevents a party from relitigating claims that either were or could have been advanced in an earlier action (see *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir.1994)), thereby ensuring "the finality of ... judgments in order to encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes" (*Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993)).

■ If what was at issue here were just the ability of this Court to make a substantive determination of a claim that had already been dealt with by an administrative agency, District's claim preclusion contentions would clearly fail. In that context an unbroken line of Supreme Court authority dating back to the seminal decision in *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) holds that judicially unreviewed state administrative determinations (such as the Simon order) are not entitled to preclusive effect on IDEA claims later filed in federal court (see *University of Tenn. v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), confirming that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims"; *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–11, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), holding that unreviewed state administrative findings have no preclusive effect on age discrimination claims brought under the Age Discrimination in Employment Act).

■ But that is really not the issue before this Court. Instead the question is the conceptually different one of whether Patricia, having filed an unsuccessful request for a Level I due process hearing, should have appealed that adverse determination administratively rather than launching a new and independent Level I request. It is entirely acceptable in the area of medical practice to seek a second opinion (though that should be contrasted with the unseemly image conveyed by a patient who goes from doctor to doctor until the patient at last obtains a diagnosis that agrees with his or her self-evaluation), but that procedure finds no echo

in the field of law. Indeed, one of the consequences of claim preclusion (compelled by the kinds of policy considerations identified in *Allied–Signal* ) is that even a *wrong* decision may become invulnerable to attack—as where a lower court reaches an incorrect result and the losing litigant, rather than seeking appellate review of that decision, attempts to bring a new lawsuit advancing the same claim (or claims that could have been included in the first lawsuit).

Claim preclusion principles are just as relevant in the context of successive administrative proceedings as they are when dealing with successive judicial proceedings. As the Restatement (Second) of Judgments § 83 (1982) states the universally-applied principle in this area:

> Except as stated in Subsections (2), (3), and (4) [none of which apply here], a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

And here is the explanation of that principle's scope contained in *id.* Comment a:

> The rule of this Section applies when a final adjudicative determination by an administrative tribunal is invoked as the basis of claim or issue preclusion in a subsequent action, whether that subsequent action is another proceeding in the same administrative tribunal or is a proceeding in some other administrative or judicial tribunal.

Accord, *Facchiano v. United States Dep't of Labor*, 859 F.2d 1163, 1167 (3d Cir.1988).

Here nothing in Section 1415 suggests that Congress intended to give parents two bites at the same apple, as Patricia sought here. Quite to the contrary, Section 1415(b)(2) confers the opportunity for " *an* impartial due process hearing" "[w]henever a complaint has been received under [Section 1415(b)(1) ]"—and Section 1451(b)(1)(E) cannot reasonably be read as providing an opportunity to make the same complaint on a repeated basis.

Hence this Court finds that Stearns appears to have been wrong in rejecting Dis-

trict's effort to obtain dismissal of Patricia's second-chance effort on claim preclusion grounds. That alone would call for the granting of District's Rule 56 motion.

*IDEA Claim*

There is however the possibility that even though Patricia's second request for Level I hearing addressed the identical claim for tuition reimbursement that had been presented in Patricia's first Level I hearing, she was then asserting (at least in part) some matters that she could not have presented in support of that request the first time around. That is what Kohn decided in rejecting a strict claim preclusion approach and in going on to address the merits, as Stearns had done in the second proceeding. Rather than attempting to parse the purported distinction between Patricia's two attacks in those terms, this opinion will go on to examine the second proceeding on the merits.

■ In that respect Patricia contends that District's failure to conduct a comprehensive case study reevaluation of Jacob before she requested a due process hearing violated IDEA's procedural requirements, thereby entitling her to reimbursement from District for the cost of Jacob's private schooling. As the party challenging the outcome of the state administrative decisions, Patricia bears the burden of proof on that point (see *Heather S.*, 125 F.3d at 1052).

Even though IDEA envisions a cooperative approach between parents and school officials in formulating an appropriate educational placement for a disabled child ( *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034), it is true that under certain circumstances IDEA authorizes reimbursement for unilateral parental placements in private schools. Over a decade ago *School Comm. of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) held that IDEA's grant of equitable authority under Section 1415(e)(2) empowers a court "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." And more recently *Doe v. Metropolitan Nashville Public Schs.*, 133 F.3d 384, 388

(6th Cir.1998) recognized a parent's right to seek reimbursement for the unilateral placement of a disabled child in a private school, but only "upon a finding of sufficiently serious procedural failures by the school district."

To see whether District did violate IDEA's procedural safeguards, it is helpful to review the undisputed chronology of the key events. On June 8, 1994 Jacob's case study evaluation was completed (D.12(M) ¶ 12). Almost exactly a year later (on June 2, 1995) Patricia enrolled Jacob in District (P. 12(N) ¶ 20). Then a few weeks after that she brought him to District for regular education placement testing (D.12(M) R. ¶ 36). Yet very shortly thereafter—on July 17—Patricia unilaterally placed Jacob at Elan (P. 12(N) ¶ 26). And it was *after* she had taken that step that she requested her first Level I due process hearing (P. 12(N) ¶ 29). Though her pleadings are rather opaque, Patricia appears to predicate her tuition reimbursement argument on the fact that District never conducted another case study evaluation. Throughout the administrative review proceedings District has maintained that it had no obligation to do so.

■ Reg. § 300.534(b) requires that disabled children undergo an evaluation to determine their eligibility under IDEA every three years, or more often "if conditions warrant, or if the child's parent or teacher requests an evaluation." Absent one of those quoted circumstances, the next regulatorily-prescribed triennial evaluation would not have taken place until June 1997.

Here the decisions by the hearing and reviewing officers evinced careful consideration of the evidence and demonstrated proper sensitivity to the complexity of the issues presented, and they agreed that there was no parental request for a reevaluation before Patricia elected on her own to place Jacob at Elan. Mindful of *Rowley's* mandate that district courts should give "due weight" to the state administrative decisions, particularly "where, as [here], the hearing officers are in accord" (*Heather S.*, 125 F.3d at 1053), this Court is constrained to conclude that the absence of a reevaluation by District before

Jacob's July 1995 placement at Elan does not violate IDEA's procedural requirements.

■ But there is more. It was the further finding of the hearing and reviewing officers that once Patricia sent Jacob to Maine, he became unavailable for a reevaluation. There is no question on the record that Patricia did not offer to tender Jacob back to Illinois for such an evaluation. Instead she suggested that District either (1) convene a staffing based solely on outside evaluations that she would procure or (2) send its personnel to Maine to conduct an out-of-state evaluation of Jacob. As to that latter suggestion, IDEA clearly does not contemplate a school district having to incur such an expense. And as to the former, it is entirely without merit.

■ While a parent who disagrees with a school's evaluation has the right both to have her child evaluated by an independent evaluator and to have such an evaluation considered by the school district (see Reg. § 300.503), it is beyond cavil that a school district has the right to conduct its own evaluations and "cannot be forced to rely solely on an independent evaluation conducted at the parents' behest" ( *Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 558 (7th Cir.1996)). As *Andress v. Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178 (5th Cir.1995) has similarly held:

> If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation.

Those standards confirm Reviewing Officer Kohn's decision holding that Patricia's unilateral placement of Jacob at Elan impermissibly thwarted IDEA's legislative scheme by depriving District of a reasonable opportunity to conduct an in-state evaluation of Jacob

and to make an informed educational placement recommendation. And a necessary consequence of that determination is that District is not responsible for the cost of Jacob's private schooling—that is the clear thrust of the case law, such as the very recent decision in *Tucker*, 136 F.3d at 503–05.[8]

### Conclusion

Whether this case is analyzed in claim preclusion terms alone or on its substantive merits, there is no genuine issue of material fact, and District is entitled to a judgment as a matter of law. That conclusion compels the granting of District's Rule 56 motion. This entire action is dismissed with prejudice.[9]

---

8. What has been said in this section of the opinion dealing with the merits reconfirms the emptiness of Patricia's Rule 56(f) request (see n. 3). Nothing that Patricia could dredge up through discovery could alter the course that she herself chose to follow, or the legal consequences flowing from her choice.

9. It is true that Patricia's counsel had also included Board as a listed defendant in the original case caption, but that is the Complaint's *only* reference to Board (in fact, the Complaint's in-troductory lead-in that precedes all of its allegations specifies that Patricia is "complaining of" District and is wholly silent as to Board). All of Patricia's allegations advert to what District did or did not do, and her prayer for relief does not implicate Board either. Understandably Board did not participate in the other litigants' summary judgment battle—there was nothing as to which it had to seek a judgment. Hence District's Rule 56 victory calls for dismissal of the action in its entirety.