**In re CONSOLIDATED MEDICAL TRANSPORT, INC., Debtor.**

**Bennett Three Leasing Services, Inc., Plaintiff,**

**v.**

**Consolidated Medical Transport, Inc., Defendant.**

**Bankruptcy No. 00 B 21108.
Adversary No. 01 A 00458.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 18, 2002.

Keevan D. Morgan, Morgan & Bley, Chicago, IL, for Debtor/Defendant.

Jose A. Isasi, Sachnoff & Weaver, Ltd. Chicago, IL, for Plaintiff.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor–Defendant Consolidated Medical Transport, Inc. ("Comed"), filed a voluntary Chapter 11 Bankruptcy Petition on July 20, 2000. Prior to that filing, Comed provided emergency medical transport services in Chicago and Northwest Indiana. On December 5, 2000, it sold substantially all of its assets at auction within the bankruptcy case under 11 U.S.C. § 363. Plaintiff–Bennett Three Leasing, Inc. and its nominee Daleyco, Inc. (collectively "Bennett") made the highest bid at auction, and an order approving that sale was entered December 12th.

Bennett filed the instant Adversary proceeding on May 15, 2001, charging Comed in Counts I, II, IV and V with breaching agreements related to that sale. Comed's former President, John Daley Jr., was also charged with unjust enrichment (Count III), but that charge was voluntarily dismissed on October 30, 2001. Defendant Comed moved to dismiss Counts I, II, and IV of this case under Fed.R.Civ.P. 12(b)(6), but that motion was denied pursuant to Memorandum Opinion and by separate order entered February 27, 2002, Comed then filed its pending Motion for Summary Judgment as to all counts arguing that Bennett is precluded from pursuing this Adversary Complaint by *res judicata* and collateral estoppel asserted to result from the settlement of certain issues in a separate suit filed against it by Bennett.

For reasons discussed below, Comed's Motion must be denied and the case will be set for trial.

## JURISDICTION

■ Breach of contract actions arising out of a post-petition contract approved in bankruptcy are core matters that can be heard and decided by a bankruptcy judge pursuant to 28 U.S.C. § 157(b)(2)(A). *In re Ben Cooper Inc.*, 896 F.2d 1394, 1400 (2nd Cir.1990); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987). Thus, core jurisdiction lies here over the present dispute under 28 U.S.C. §§ 1334(a) and 157(b)(2)(A) and the standing referral order under District Court Internal Operating Procedure 15(a). Venue lies here under 28 U.S.C. § 1409(a).

## BACKGROUND

### Local Rule 402

Pursuant to Local Rules 402 M and N, the parties have exchanged materials and briefs. Comed filed its Memorandum of Law in support of the Motion along with a Statement of Material Facts under Local Bankr.R. 402 M. Plaintiff responded by filing its response to the Comed statement of facts and its Memorandum of Law in opposition to the motion, as well as its own Statement of Additional Facts to oppose the Motion under Local Bankr.R. 402 N. Comed has not controverted those Additional Facts, and therefore under Local Rule 403 N(3)(b) they are deemed to be admitted.

### Undisputed Facts

The following undisputed facts were derived from the aforementioned submissions by the parties:

1. Bennett purchased substantially all of Comed's assets at auction on December

5, 2000. The assets were divided into two "Lots." The parties executed separate purchase agreements for each Lot. Comed's 402 M at ¶ 4.

2. The Purchase Agreement as to Lot 1 included a list of executory contracts and leases which were to be assigned to Bennett. One of the contracts listed was a "month-to-month lease" for a dispatch center located at 1234 Sibley Blvd., Dolton, Illinois. Comed's 402 M at ¶ 5; Bennett's 402 N(3)(b) at ¶ 2.

3. Bennett purchased Comed's rights under the "Emergency Ambulances Service Agreement between the Town of Munster, Indiana and Comed." This is the so-called "Munster Contract." Bennett's 402 N(3)(b) at ¶ 3.

4. Comed filed its own separate four-count lawsuit against Bennett on May 11, 2001, by Adversary Complaint, No. 01 A 00440. That Adversary Complaint alleged that Bennett breached the Purchase Agreements by failing to make payments owed to former Comed employees (Count I), that it allowed Comed's property to be damaged while in its care (Count II), that Defendant owed rent for occupancy of the premises at 1234 Sibley Boulevard (Count III), and that it failed to turn over certain accounts receivables collected on behalf of Comed (Count IV). Comed's 402 M at ¶ 8; Bennett's 402 N(3)(b) at ¶ 4.

5. Bennett filed this Adversary Complaint against Comed a few days later on May 15, 2001. Count I alleges that Comed breached the Lot 2 Purchase Agreement relating to certain medicare accounts receivables by causing Medicare to have a "claim" against those accounts receivables, which rendered them uncollectible. Count II alleges breach of contract based on Bennett's purchase of a purported "month-to-month lease" on the dispatch center at 1234 Sibley Boulevard which had already expired, according to Bennett. Bennett also charges in Count III that John Daley Jr. was unjustly enriched as a result of payments made to obtain the purported "month-to-month lease." Count IV alleges breach of contract for failure to turnover property that was purportedly assigned as part of the purchase of the Munster Contract, and Count V pleads breach of contract based on Comed's alleged failure to credit certain 401(k) payments withheld from the paychecks of former Comed employees. Bennett's 402 N(3)(b) at ¶ 5.

6. Bennett answered Comed's Complaint in Adversary No. 01 A 00440 on June 11, 2001. Bennett incorporated the allegations from its Complaint against Comed in this case as an affirmative defense. Comed's 402 M at ¶ 9; Bennett's 402 N(3)(b) at ¶ 6.

7. Pursuant to a Limited Settlement Agreement between the parties in Case No. 01 A 00440, the court approved a settlement of Count I of Comed's Complaint in that Adversary proceeding on October 17, 2001. Comed's 402 M at ¶ 11. That settlement agreement contained the following provision: "WHEREAS, the Debtor and the Purchaser have reached agreement as to the resolution of all of the Assumed Liabilities, but not Counts II, III, or IV of the Comed Adversary Proceeding or defenses thereto or the Bennett Adversary Proceeding or defenses thereto." Bennett agreed to pay $186, 062 to settle Count I of Comed's Complaint in that case. Bennett's 402 N(3)(b) at ¶ 8.

8. Count I of the Comed suit in Adversary No. 01 A 00440 was dismissed with prejudice pursuant to the foregoing settlement on October 30, 2001. The order dismissing that Count provided that the Limited Settlement Agreement "in no way affects any additional claims or defenses that the Debtor or Bennett Three, Daleyco or Superior have against each other in this

and/or any other litigation." Bennett's 402 N(3)(b) at ¶ 10.

9. On October 25, 2001, the parties settled Counts II, III, and IV of Comed's Complaint in Adversary No. 01 A 00440 with Bennett agreeing pursuant to an Offer of Judgment under Rule 7068 Fed. R.Bankr.P. [Rule 68 Fed.R.Civ.P.] to entry of judgment in the amount of $45,305.63. The Offer of Judgment was the result of joint drafting by the parties who exchanged three drafts of the Offer before concluding an agreement on the final draft. Bennett's 402 N(3)(b) at ¶ 11.

10. Pursuant to the negotiated Offer of Judgment, the court entered a Final Judgment as to Counts II, III, and IV of Comed's Complaint in Adversary Case No. 01 A 00440 on November 4, 2001. That Judgment provided that "the settlement of Count I shall remain in full force and effect after the entry of this Judgment Order." Bennett's 402 N(3)(b) at ¶ 12.

## Standards for Summary Judgment

Movant on a motion for summary judgment must show that there are no genuine issues of fact which need to be resolved at trial and that it is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056(c). This burden is met by identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any" which show that no reasonable fact finder could find for the non-moving party. *Id.; Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994) (a genuine issue exists where reasonable jury could find for non-moving party). In deciding whether there is a triable dispute, the court must construe all reasonable inferences that can be drawn from the facts in favor of the non-moving party. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986).

## Comed's Res Judicata Argument

Judicial economy is the basis of the doctrine of *res judicata. Durhan v. Neopolitan*, 875 F.2d 91, 93–94 (7th Cir. 1989). Once a case has been litigated it cannot be re-litigated by the same parties. Therefore, if the parties are the same, the issues are the same, and there has been a final adjudication of the claim, the parties are precluded from further litigation in federal court. *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995). The doctrine of *res judicata* has a broader application than the related concept of collateral estoppel which bars re-litigation of issues already decided in a previous lawsuit. *Williams v. Lehigh County Dept. of Corrections, et al.*, 19 F.Supp.2d 409, 411 (E.D.Pa.1998). Under the doctrine of *res judicata*, the parties are not only precluded from raising issues that were previously raised, they are precluded from litigating any matters that could have been raised in the prior suit. *Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir.1989) (citation omitted).

The first element of the claim preclusion test is satisfied here. The parties to the instant action are the same as named parties in the other suit. The next step is to determine if the subject matter of claims pleaded here are the same as those settled in the other suit. Comed argues that the present Adversary arises from the same transaction or occurrence as its prior suit and that Bennett is therefore precluded from litigating this Adversary Complaint because it involves claims that were already adjudicated or could have been. Bennett responds that the various purchase agreements involved constitute multiple contracts and that the alleged breaches arising from those contracts do not have the same factual underpinnings. Hence, it argues there is no identity between the instant action and the other suit.

Determinations of whether factual groupings pleaded in suit arise from the same transaction are generally based on pragmatic considerations of whether the facts are related in time, space, origin, motivation, or whether they form a convenient trial unit. Restatement (Second) of Judgments § 24(2) (1980 Main Vol.). Bennett cites authority in this Circuit which has interpreted this rule as requiring two claims to be based on the same, or nearly the same, factual allegations before they are deemed to be a single transaction for purposes of *res judicata*. *See Colonial Penn Life Insurance Co. v. Hallmark Insurance Administrators, Inc.*, 31 F.3d 445 (7th Cir.1994); *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223 (7th Cir. 1993). Drawing upon those cases, Bennett argues that the instant case does not arise from the same transaction as pleaded in the other case.

But here, unlike in *Herrmann* or *Colonial Penn* there is considerable overlap between some of the factual allegations in the two lawsuits.

For example, Count V of this Bennett Adversary alleges that Comed failed to make certain payments to employees 401(k) plans even though Bennett had made the payments to Comed on behalf of those employees. Count I of the Comed suit alleged that Bennett failed to pay the same employees, as it was required to do under the Purchase Agreement. Obviously, both claims centered on whether Bennett made the requisite payments. Likewise, there is similarity between the factual allegations in Count III (failure to pay rent for occupancy of dispatch center) of Comed's Adversary and Count IV (breach of the agreement for a month to month lease on dispatch center) of Bennett's present case. The allegation that Bennett did not pay rent on the dispatch center springs from then same core

facts as those relating to the month to month lease which Bennett says it paid for but did not receive. In fact, the only place where there is clearly no overlap is Count II of the Comed Adversary (destruction of Comed's property).

Bennett wishes to treat the contracts as divisible agreements from which multiple causes of action have arisen. Under this reasoning, as long as the factual allegations are not exactly the same in each cause of action, the transactions are not the same under the doctrine of *res judicata*. However, taken to its extreme, this would return federal practice to old formulations of a transaction which were eschewed by the adoption of new standards. See Restatement (Second) Judgments § 24 reporter's notes (1980) (noting the first Restatement applied transactional approach but required that evidence in a second action must have been able to sustain the first action for there to be a single transaction); *Also See Durhan v. Neopolitan*, 875 F.2d 91, 94 (7th Cir.1989) (most federal courts have adopted the broader preclusive affect of the transactional approach as opposed to the proof or evidence approach).

■ However, having concluded that Comed cannot satisfy the third element of the test for claim preclusion, it need not be decided at this point whether claims in this case arose from the same transaction.

Comed concedes that the Limited Settlement Agreement, disposing of Count I of its suit, preserved the present Adversary. However, it contends that the Offer of Judgment was a final adjudication of not only Counts II, III, and IV of its Complaint, but also extinguished all litigation issues that had been preserved by the Limited Settlement Agreement. But that assertion is contradicted by the express language of the argued and negotiated Offer of Judgment that "the settlement of

Count I shall remain in full force and effect after the entry of this Judgment Order." Therefore, the unambiguous language of the contract entered into pursuant to the Offer of Judgment shows that Bennett preserved claims in this case that had been preserved under the Limited Settlement Agreement. Indeed, that reservation was specifically reaffirmed in the Offer of Judgment. Comed invites the court to turn away from the clear language of the agreement between the parties and to engage in what it terms a "dicey" interpretation of the facts to conclude that the Offer of Judgment extinguished the present suit, even though the agreement itself plainly shows that was not the intent of the parties. Such an approach would turn the standard for summary judgment upside down, since the court must interpret the facts in the light most favorable to the non-movant, *Bartman,* 799 F.2d at 312 (court must construe facts in light most favorable to non-moving party), and the motion cannot prevail when that is done here.

 Comed also contends that the settlement agreement should be construed against Bennett because it drafted the agreement. But this principle only apples where the contract is ambiguous. That is not the case here. In fact, even if the contract were ambiguous, the result would be the same for Comed because disputes involving the intent of the parties to a contract are inappropriate matters for summary judgment. *Fitzsimmons v. Jersey State Bank,* 528 F.2d 692, 694 (7th Cir.1976). Further, the uncontroverted facts show that the Offer of Judgment was the result of a joint effort between counsel for both sides. Therefore, Comed's assertion of a legal principle dependent on the agreement being drafted only by Bennett is unsupported. For the foregoing rea-

sons, *res judicata* does not preclude Bennett from bringing the present claim.

### Collateral Estoppel

 Issue preclusion or collateral estoppel bars the re-litigation of issues that have already been litigated between the parties. Four conditions must be met to invoke the doctrine of collateral estoppel: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair v. Sherman,* 230 F.3d 890, 893 (7th Cir.2000). Because issue preclusion is an affirmative defense, the party seeking to invoke the doctrine has the burden of satisfying each of these elements. *Id.* at 894.

 Comed has not attempted to set forth any facts sufficient to satisfy the required elements to support its collateral estoppel defense. Instead, it has attempted to distinguish the cases cited by Bennett which hold that consent judgments do not support the invocation of collateral estoppel by arguing that the Offer of Proof entered here was not a consent judgment. *See People Who Care v. Rockford Board of Ed.,* 68 F.3d 172, 178 (7th Cir.1995) (issue preclusion does not apply to consent judgment because issues underlying consent judgment were never actually litigated); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir. 1990) (same). Comed asserts that the Offer of Judgment was a final judgment on the merits pursuant to Fed.R.Civ.P. 68, not a consent judgment. A consent judgment is "a settlement that becomes a court judgment when the judge sanctions it." Black's Law Dictionary 846 (7th ed.1999). It is true that the Offer of Judgment when approved merged all claims in that suit

and definitively settled all issues related thereto. However, the judgment entered merely sanctioned the agreement negotiated by the parties. In contrast, judgements entered on the merits are rulings entered by the court, based on evidence and not requiring agreement of the parties. Thus, the assertion that a Rule 68 judgment made upon an Offer of Judgment is the equivalent of a trial judgment is unfounded in law or logic. That is why such judgments routinely contain disclaimer statements. *See The New York Society of Certified Public Accountants v. Eric Louis Associates, Inc.,* 79 F.Supp.2d 331, 337 Fn.4 (S.D.N.Y.1999). In sum, Comed has failed to establish the elements needed to invoke the defense of collateral estoppel.

## CONCLUSION

Comed is not entitled to preclude the instant Adversary under claim preclusion or issue preclusion. It is clear from the record that the parties agreed to preserve the instant suit when they agreed to settle the other suit, and Comed cannot now claim otherwise. For the reasons stated herein, Comed's motion for summary judgment will be denied by separate order, and the case will be set for trial.