**Brandon COLON, a minor by his mother and legal guardian, Maria Jacqueline DISEN–COLON, and Maria Jacqueline Disen–Colon, Individually Plaintiffs**

v.

**COLONIAL INTERMEDIATE UNIT 20, Jeffrey Karpen, Cheryl Berry and Joseph Mickley, Defendants**

No. 3:02CV2123.

United States District Court, M.D. Pennsylvania.

Aug. 4, 2006.

Frederick M. Stanczak, Law Offices of Frederick M. Stanczak, Doylestown, PA, for Plaintiffs.

John E. Freund, III, King Spry Herman Freund & Faul, LLC, Bethlehem, PA, Robin B. Snyder, Marshall Dennehey Warner Coleman & Goggin, Scranton, PA, for Defendants.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is the report and recommendation of Magistrate Judge Malachy E. Mannion that provides a suggested disposition for the: (1) motion for summary judgment filed on behalf of Defendants Colonial Intermediate Unit 20, ("CIU20") and Joseph Mickley; (2) motion for summary judgment filed on behalf of Jeffrey Karpen; and (3) cross-motion for summary judgment filed on behalf of the plaintiffs, Brandon Colon and Maria Disen–Colon. Defendants CIU20 and Jeffrey Karpen filed objections to the report and recommendation.

### Background

Plaintiff Brandon Colon (hereinafter "Brandon") is a resident of the Pocono Mountain School District which is within the service area of CIU20. Brandon suffers from serious emotional disturbance, and he is an eligible exceptional student [1] entitled to special education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.* He is also a child with a disability within the meaning of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)(2) and the Americans with Disabilities Act, (hereinafter "ADA"), 42 U.S.C. § 12101. Plaintiff Maria Jacqueline Disen–Colon (hereinafter "Maria") is Brandon's mother and natural guardian.

---

1. "Exceptional children" are "children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services...." 24 P.S. § 13—1371.

Defendant CIU20 is responsible for providing special education and related services to students with disabilities who are placed in Intermediate Unit programs by local school districts. Defendant Joseph Mickley, PhD, is the Executive Director of CIU20. Defendant Cheryl Berry is a mental health treatment specialist with CIU20. Defendant Jeffrey Karpen is a CIU20 teacher who taught Brandon.

When Plaintiff Brandon began the third grade at Pocono Mountain School District, the school district evaluated him because he lacked success in the classroom. The school district performed a multidisciplinary evaluation that resulted in the production of a comprehensive evaluation report ("CER"). The CER concluded that a serious emotional disturbance caused plaintiff's lack of success in the classroom.

The school then developed an individual education program ("IEP") for Brandon based upon the CER. At the beginning of the 2000–2001 school year, third grade for the plaintiff, the district placed him in the Barrett Elementary Center within the district. He attended this center until February 2001 at which time, the school district assigned him to the Pocono Mountain Elementary Center North. During the school year, Brandon "exhibited serious behavior problems which included banging his head, slapping his face, threatening and hitting other students, throwing furniture, and leaving the classroom without permission." Amended Complaint, at ¶ 26. During this time, school district personnel used passive restraints on Brandon.

On September 27, 2001, Dr. Martha Turnberg performed a psychiatric evaluation on Brandon for the district. She recommended that his placement be changed to a partial hospitalization program to address his academic, behavioral and emotional needs. Subsequently, the school district placed Brandon in the CIU20's partial hospitalization program. The CIU20's treatment of Brandon while he participated in this program is the basis of the instant law suit.

Brandon participated in the partial hospitalization program from October 2001 through December 11, 2001. During his time in the program, Brandon continued verbal and physical abuse of others and self-injurious behaviors. According to the Amended Complaint, CIU20 personnel who were assigned to work with him, including Defendants Berry and Karpen, repeatedly subjected him to punishment for behavior that was a manifestation of his disability. CIU20 personnel utilized the following in dealing with Plaintiff Brandon: use of physical restraints; placement in a "time out" room for an entire day; and deprivation of benefits generally available to students in the program, such as hot lunches, bathroom privileges and regular breaks.

On December 11, 2001, the CIU 20 informed Maria that Brandon was immediately discharged from the partial hospitalization program and his placement changed to "homebound" placement.

Based upon the above allegations, plaintiffs commenced the instant action. On April 8, 2003, plaintiffs filed an amended complaint alleging the following causes of action: 1) deprivation of Brandon's rights under the IDEA, 34 C.F.R. Part 300 and 22 Pa.Code § 14.133; 2) deprivation of Maria's rights to due process under IDEA, 34 C.F.R. Part 300 and 22 Pa.Code § 14.133; 3) deprivation of Brandon's rights under § 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 729; 4) deprivation of Maria's rights to remain free from discrimination because of her association with Brandon, a person with a disability, under § 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 729; 5) deprivation of Brandon's rights under the ADA, 42

U.S.C. 12101; 6) deprivation of Maria's rights to remain free from discrimination because of her association with Brandon, a person with a disability, under the ADA, 42 U.S.C. 12101; 7) deprivation of rights under the IDEA, the Rehabilitation Act and the ADA, in violation of the civil rights under 42 U.S.C. § 1983, against the individual defendants and 8) violation, by Defendant CIU20, of Brandon's rights in the adoption of a policy or practice of failing to assure that children such as Brandon are provided with appropriate individualized educational programming as a means of preventing the imposition of punishment for behavior that is a manifestation of disability.

Plaintiffs seek a declaration from the court that the defendants violated their rights under the IDEA, ADA and Rehabilitation Act. In addition, plaintiffs seek compensatory and punitive damages, costs and attorney's fees.

In July 2004, Defendants CIU20 and Karpen filed motions to dismiss. On November 18, 2004, Magistrate Judge Mannion issued a report and recommendation recommending the disposition of the motions to dismiss. The parties filed no timely objections to the report and recommendation. Therefore, we adopted it on December 13, 2004, and granted the motions to dismiss in part and denied them in part.

After the close of discovery, the parties filed several motions for summary judgment. The instant report and recommendation addresses these motions. Defendants Jeffrey Karpen and CIU20 filed objections to the report and recommendation, bringing the case to its present posture.

## Jurisdiction

As this case is brought pursuant to the IDEA, ADA, Rehabilitation Act, and section 1983, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## Standard of review

In disposing of objections to a magistrate's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); *see also Henderson v. Carlson,* 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions. *Id.*

Magistrate Mannion's report and recommendation addresses motions for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International*

*Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

**Discussion**

Initially, we will provide a brief overview of the various statutes invoked by the plaintiffs. As noted above, plaintiffs have brought suit pursuant to the IDEA. The purpose of the IDEA is to "assure that all handicapped children have available to them ... a free appropriate public education." 20 U.S.C. § 1400(c). Included in the definition of "handicapped children" are children who, like Brandon, suffer from "serious emotional disturbance ... who by reason thereof, need special education and related services." 20 U.S.C. § 1401(3)(A). In order to receive federal funding to aid in the education of the disabled, states must provide programs that comply with IDEA requirements. 20 U.S.C. § 1412. Included in the requirements is that the state has in effect "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1).

The congressional goal of providing a free appropriate education is implemented through the use of an "individualized educational program" (hereinafter "IEP"), which is developed for each disabled child. 20 U.S.C. § 1412(4). The IEP is developed by the parents, representatives of the school and where appropriate, the disabled child. 20 U.S.C. § 1414(b). It sets out "the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). A yearly review of the IEP is performed to determine if any revisions are necessary to provide a free and appropriate education to each child's unique needs. *Id.*

Plaintiffs also sue under section 504 of the Rehabilitation Act, 29 U.S.C. § 729 (hereinafter "section 504"). This statute prohibits discrimination against the disabled in federally funded programs. Specifically, the law provides:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).

The IDEA and section 504 provide equivalent requirements. The IDEA, provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled.

*W.B. v. Matula,* 67 F.3d 484, 492–93 (3d Cir.1995).

The third act under which the defendant sues is the ADA. Like section 504, the ADA prohibits discrimination against the disabled.

■ The fourth statutory claim that the plaintiffs make is filed pursuant to 42 U.S.C. § 1983 (hereinafter "section 1983"). Section 1983 is not a source of substantive rights, but is rather, a means to redress deprivation by state officials of rights secured by the United States Constitution or certain federal statutes. *W.B.,* 67 F.3d at 493. Section 1983 may be used to remedy a violation of the IDEA. *Id.* at 494.

Bearing these various statutes in mind, we will now address the objections filed by the defendants.

## I. Defendant CIU20

Defendant CIU20's basically objects to two of the magistrate's findings. It objects to the denial of its motion for summary judgment with regard to whether it can be held liable to the plaintiffs because it was not responsible for providing Brandon with a free appropriate public education ("FAPE"). It also objects to the magistrate judge denying it summary judgment on the grounds of failure to exhaust administrative remedies. We will address these two claims separately.

### A. FAPE

In its motion for summary judgment, CIU20 argues that the Pocono Mountain School District is the Local Educational Agency ("LEA") responsible for Plaintiff Brandon's FAPE. Therefore, it is CIU20's position that it cannot be held liable under the IDEA.

In addressing this issue, Magistrate Judge Mannion noted that the defendant raised the same issue in the motion to dismiss this case. In his report and recommendation regarding the motion to dismiss the Magistrate Judge recommended denying the motion with respect to the LEA/FAPE arguments. CIU20 raised no objection to the Magistrate Judge's recommendation with regard to the motion to dismiss, and we adopted the recommendation. Thus, in the report and recommendation regarding the motion for summary judgment, Magistrate Judge Mannion states: "[T]he court finds no basis to revisit the issue on defendants' motion for summary judgment and stands by its prior decision." (Doc. 112, Report and Recommendation at 11).

Defendant CIU20 asserts that the motion to dismiss standard and the motion for summary judgment standard are different, therefore, it is proper to address this issue again. It claims that evidence, which could not be used to determine the motion to dismiss, is now available and it is proper to examine this evidence for purposes of deciding the summary judgment motion.

We have reviewed the claim to determine if CIU20 has submitted any evidence that should change the magistrate's analysis in the report and recommendation of November 18, 2004, and it has not. The evidence to which defendant refers the court indicates that the plaintiffs have already been involved with proceedings against the school district regarding the IDEA. The school district and the plaintiffs eventually entered into a settlement agreement. (Def.CIU20, App.14). This evidence, although it will be discussed more fully below, provides basis for us to alter the Magistrate Judge's recommendation. In fact, the report and recommendation specifically addresses this very settlement agreement. (Doc. 58, Report and Recommendation of 11/18/04 at 11—20).

Basically, Defendant CIU20 is urging us, via its summary judgment motion, to

reconsider a decision already made in this case. Thus, we will treat this portion of CIU20's motion as a motion for reconsideration of our order of December 13, 2004 order adopting the Magistrate Judge's original report and recommendation.

The time limit for filing such a motion for reconsideration is ten (10) days. *See* Local Rule 7.10 ("Any motion for reconsideration or reargument shall be filed within ten (10) days after the entry of the judgment, order or decree concerned.") Defendant CIU20's filed its motion for summary judgment on July 29, 2005, over seven (7) months after the entry of the order at issue. As such, the motion is late.

■■■ Besides being late, the motion lacks merit. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985); *Max's Seafood Cafe ex rel. Lou Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). The movant must demonstrate one of three grounds in order for such a motion to be granted: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Cafe,* 176 F.3d at 677. A motion for reconsideration is not a proper vehicle to merely attempt to convince the court to rethink a decision it has already made. *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993).

■■■ In the instant case, CIU20 evidently argues that our previous ruling is a clear error of law. With no citation to any legal authority, defendant contends that "Plaintiff is not entitled to seek relief from more than one educational agency for FAPE." (Doc. 114, Defendant CIU20's

Brief in Support of Objections, at 8). The law, however, as cited by the Magistrate Judge, indicates that an intermediate unit can be responsible, or co-responsible, for providing FAPE.

The law in Pennsylvania provides that the primary responsibility for identifying exceptional children and developing appropriate educational programs to meet their needs lies with the local school district. 22 Pa.Code § 13.11(b). When, however, the school district cannot provide an appropriate program effectively and efficiently, it uses the services of the intermediate unit. Intermediate units such as Defendant CIU20 are charged with the duty to "provide for the proper education and training for all exceptional children who are not enrolled in classes or schools maintained and operated by school district or who are not otherwise provided for." 24 P.S. § 1372(4).

Accordingly, the case law reveals that intermediate units may be held liable under IDEA. *See, e.g., M.K. v. Ephrata Area School,* No. Civ.A.030CV–4319, 2004 WL 1052999 (E.D.Pa. May 5, 2004); *Johnson v. Lancaster County Children and Youth Service,* No. Civ. A. 92–7135, 1993 WL 245280 (E.D.Pa. July 2, 1993).

Defendant's motion for reconsideration, styled as a motion for summary judgment, will thus be denied. Defendant CIU20 presents no evidence in support of the motion for summary judgment that would change what are generally questions of law that were previously decided in the report and recommendation of November 18, 2004.

Similarly, CIU20 argues that a settlement agreement between the Pocono Mountain School District and the plaintiffs regarding the same issues as this lawsuit precludes the plaintiff from seeking damages from it. The Magistrate Judge also

rejected CIU20's argument regarding this settlement agreement in the original report and recommendation, and CIU20 did not object. There is no reason to reconsider that decision. No facts have come out in discovery that would alter the magistrate's original conclusion to which the CIU20 did not object. Moreover, the settlement agreement explicitly provides that the plaintiffs "do not waive any claims they might otherwise have against Colonial Intermediate Unit 20. . . . This agreement is exclusively between the Parents and the Pocono Mountain School District." (*Id.* at ¶ 6).

Accordingly, the school district and the CIU20 can be jointly responsible for the FAPE of Plaintiff, and the settlement agreement does not preclude the instant action. Therefore, CIU20's objection with regard to these issues will be overruled.

## B. Exhaustion of Administrative Remedies

Defendant CIU's objections next address the issue of exhaustion of administrative remedies. The Magistrate Judge discussed the issue of exhaustion of administrative remedies as a matter of law in the November 18, 2004 report and recommendation. The magistrate concluded that as a matter of law, plaintiffs did not need to exhaust their administrative remedies in the instant case. Defendant did not object to this finding at the time, and this court adopted the Magistrate Judge's conclusion. (*See* Doc. 59, 12/13/04 order adopting Magistrate Judge's report and recommendation).

Defendant CIU20, however, raised the identical issue in the motion for summary judgment. CIU contends that "[t]he Magistrate Judge failed to take into account Defendant's record evidence and arguments that Plaintiffs failed to exhaust their administrative remedies against CIU20."

(CIU20's Brief in Support of Objections at 10). The record evidence on this issue, however, does not affect the outcome. This issue is merely a matter of law, and no reason exists for the defendant to raise the issue again as it already has been dealt with in the motion to dismiss.

Once again, defendant has effectively raised a motion for reconsideration of this court's order adopting the report and recommendation of November 14, 2004. Defendant has not established a basis for us to reconsider our decision. As it is a question of law, evidence gathered during discovery is immaterial.

█ Generally, exhaustion is, in fact, necessary for an IDEA claim. *See* 20 U.S.C. § 1415(f). The Third Circuit Court of Appeals, has held, however, that exhaustion is not necessary where the plaintiffs seek compensatory damages. *W.B. v. Matula,* 67 F.3d 484, 495–96 (3d Cir.1995). In the instant case, a review of the amended complaint indicates that the plaintiffs seek compensatory damages. (Doc. 17, Amended Complaint, Request For Relief, ¶ 1–4). Exhaustion, therefore, is not required.

For the reasons set forth above, the objections filed by Defendant CIU20 will be denied, and the Magistrate Judge's report and recommendation will be adopted with regard to whether the CIU20 can be held liable under IDEA, and whether exhaustion of administrative remedies is necessary.

## II. Defendant Jeffrey Karpen

Plaintiffs have also sued Jeffrey Karpen. Karpen served as Plaintiff Brandon Colon's teacher at CIU20. At the close of discovery Karpen filed a motion for summary judgment. The Magistrate Judge presented a suggested disposition of the motion in his report and recommendation of March 10, 2006. Karpen objects to the

report and recommendation, raising the following three issues: 1) Is Defendant Karpen an appropriate party under IDEA? 2) Is Defendant Karpen immune from suit?; and 3) Do the plaintiffs fail to state a cause of action for punitive damages? We shall address these issues in seriatim.

## A. IDEA

First, Defendant Karpen argues that as an individual, he cannot be held liable to the plaintiffs for denial of a free appropriate public education under the IDEA. Prior to the motion for summary judgment, Defendant Karpen filed a motion to dismiss. In his report and recommendation dealing with the motion to dismiss, the Magistrate Judge suggested denying Karpen's motion. Karpen did not object to the report and recommendation, and this court adopted the report and recommendation on December 13, 2004. (Doc. 59).

In the current report and recommendation, the Magistrate Judge suggests denying the defendant's argument that he cannot be held liable under IDEA, in part, because he failed to object to the report and recommendation dealing with the motion to dismiss. A review of the relevant report and recommendation, however, reveals that the precise issue that Defendant Karpen now advances was not addressed in it.

The motion to dismiss report and recommendation dealt with the issues of whether Karpen could be held personally liable under the ADA or section 504 of the Rehabilitation Act. It also addressed the issue of whether qualified immunity is applicable to the section 1983/IDEA cause of action. It did not address whether Karpen can be held individually liable under the IDEA. As this Magistrate Judge did not address this issue in the motion to dismiss report and recommendation, it is appropriate for us to address it with regard to the motion for summary judgment.

■ The IDEA imposes requirements on public educational authorities and private entities that accept placement of IDEA covered students. *P.N. v. Greco*, 282 F.Supp.2d 221, 238 (D.N.J.2003). Liability under the IDEA does not extend to individual actors such as Defendant Karpen. *Id.* Accordingly, to the extent that the complaint seeks to impose individual liability under the IDEA against Defendant Karpen, the motion for summary judgment will be granted.

Although, individual liability cannot be imposed *directly* under IDEA, it can be imposed indirectly if suit is brought under section 1983 for a violation of IDEA. *W.B. v. Matula*, 67 F.3d 484 (3d Cir.1995). Plaintiff has alleged such a cause of action in this case. Therefore, to the extent that the plaintiff seeks to impose individual liability under the IDEA through section 1983, judgment will not be granted to Defendant Karpen.

## B. Is Karpen immune from suit?

■ Next, Karpen argues that the defense of qualified immunity is available to him as a school official. The defense of qualified immunity may, in fact, be raised by school officials who are alleged to have violated the IDEA. *W.B.*, 67 F.3d at 499. To determine if Defendant Karpen enjoys qualified immunity in his individual capacity, we first determine whether plaintiff has alleged a constitutional or statutory violation. *Id.* "If so, defendants will nevertheless not be liable if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks omitted).

■ For a right to be clearly established, its contours must be sufficiently

clear that a reasonable official would understand that his actions violate that right. The official is entitled to qualified immunity if the right was not clearly established when he acted, because the official cannot be expected to anticipate subsequent legal developments. *Id.* (internal quotation marks and citations omitted).

In the instant case, plaintiffs assert a violation of the IDEA as the basis for their section 1983 claim to which Defendant Karpen claims qualified immunity. "[T]o defeat a qualified immunity defense in an IDEA action, a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather a plaintiff must demonstrate that the particular actions taken by defendants were impermissible under law established at that time." *Id.* at 499–500 (internal quotation marks and citations omitted).

As an initial matter, Defendant Karpen asserts that plaintiff did not respond to his statement of material facts, therefore, all the facts therein should be taken as admitted. We disagree. While plaintiffs did not specifically reply to the statement of material facts filed by Defendant Karpen, they did file their own statement of material facts addressing many of the same issues. Accordingly, we will not treat Defendant Karpen's statement of material facts as admitted. Our decision is especially apt, as Defendant Karpen raises this issue for the first time in his brief in support of his objections to the Magistrate Judge's report and recommendation, and thus the Magistrate Judge did not have an opportunity to address it.

Instantly, plaintiffs allege Defendant Karpen violated the IDEA by punishing Plaintiff Brandon for behavior that was merely a manifestation of his disability and using restraints on him even though his IEP contained no behavioral management plan and no IEP meeting was convened to consider the appropriateness of the plaintiff's programs.

Because we do not accept Defendant Karpen's statement of material facts as true, we are in agreement with the Magistrate Judge that a genuine issue of material fact exists as to whether Defendant Karpen's action of, inter alia, placing Plaintiff Brandon in time-out and the use of passive restraints, were done for Brandon's safety and the safety of others or whether they were in fact punishment for behavior which is a manifestation of Brandon's disability. Accordingly, a genuine issue of material fact exists as to whether Karpen's actions violated clearly established laws, and we will adopt the Magistrate Judge's report and recommendation recommending the denial of summary judgment with regard to the qualified immunity claim.

### C. Punitive damages

The final issue raised by Defendant Karpen is punitive damages. He argues that the record reveals that he did not act with the requisite state of mind necessary for the imposition of punitive damages, and therefore, judgment should be granted in his favor on the punitive damages claim. We disagree.

In section 1983 cases, punitive damages are available where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. City of Philadelphia,* 983 F.2d 459, 469–70 (3d Cir.1992) (internal quotation marks, citation omitted). In the instant case, Defendant Karpen states that it is uncontested that he only restrained the plaintiff in situations where he was attempting to injure himself, others, or school property, therefore, punitive damages are inappro-

priate. As set forth above, however, genuine issues of material fact exist as to his reasons for restraining the plaintiff, therefore, summary judgment on the issue of punitive damages is inappropriate.

### III. Portions of the report and recommendation without objections

Defendant Mickley and the plaintiffs also filed motions for summary judgment. They, however, did not file objections to the Magistrate Judge's report and recommendation. Magistrate Judge Mannion suggests granting summary judgment to Defendant Joseph Mickley on all the counts remaining against him. He also recommends that plaintiffs' motion for summary judgment be denied completely. No objections have been filed to these recommendations.

 In order to decide whether to adopt the portions of a report and recommendation that are not objected to, we must determine whether a review of the record evidences plain error or manifest injustice. *See, e.g., Sullivan v. Cuyler,* 723 F.2d 1077, 1085 (3d Cir.1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

After a careful review, we find neither a clear error on the face of the record nor a manifest injustice, and therefore, we shall adopt the report and recommendation with respect to Defendant Mickley and grant judgment in his favor. We will also adopt the report and recommendation with respect to the denial of the plaintiffs' motion for summary judgment.

### Conclusion

For the reasons set forth above, the defendants' objections to Magistrate Judge Mannion's report and recommendation will be overruled in part and sustained in part. The objections will be sustained with regard to Defendant Karpen's argument that he cannot be personally liable under the IDEA. The objections will be overruled in all other respects. An appropriate order follows.

Due to the disposition of the motion to dismiss and the motion for summary judgment, the status of the parties is as follows: Plaintiff Maria Jacqueline Disen–Colon no longer has any individual claims; all claims remain against CIU20; no claims remain against Defendant Mickley; the section 1983 claim against Defendant Karpen remains as well as the punitive damages claim against Karpen in his individual capacity. Otherwise, the punitive damages claim is out of the case. The status of Defendant Cheryl Berry is unknown. Plaintiff has evidently been prosecuting this action despite the fact that Berry is unrepresented and has evidently not taken part in any of the proceedings. Remaining in the case, therefore, are all of Plaintiff Brandon Colon's claims against CIU20, and his section 1983 claim, including punitive damage, against Defendant Karpen.

### ORDER

**AND NOW,** to wit, this 4th day of August 2006 it is hereby ordered as follows:

1) The objections to the report and recommendation filed by Colonial Intermediate Unit 20 (Doc. 113) are **OVERRULED**;

2) The objections to the report and recommendation filed by Defendant Jeffrey Karpen (Doc. 115) are **SUSTAINED** to the extent that he claims he cannot be held liable in an individual capacity for a direct violation of the IDEA, they are **OVERRULED** in all other respects;

3) Magistrate Judge Mannion's report and recommendation (Doc. 112) is **ADOPTED** except to the extent that it suggests that Defendant Karpen can be held liable directly for a violation of the IDEA in his individual capacity;

4) Plaintiffs' motion for summary judgment (Doc. 96) is **DENIED**;

5) The motion for summary judgment filed by Colonial Intermediate Unit 20 and Joseph Mickley (Doc. 91) is **GRANTED** to the extent that judgment is **GRANTED** to Defendant Mickley and against the plaintiffs; the punitive damage claims against both defendants is **DISMISSED**; and the individual claims of Plaintiff Maria Jacqueline Disen–Colon are **DISMISSED**. The motion is **DENIED** in all other respects;

6) The motion for summary judgment filed by Defendant Jeffrey Karpen (Doc. 93) is **GRANTED** except to the extent that the section 1983 claim based upon a violation of the IDEA and the punitive damages claim both remain.

### REPORT AND RECOMMENDATION

MANNION, United States Magistrate Judge.

Pending before the court are: (1) a motion for summary judgment filed on behalf of defendants Colonial Intermediate Unit 20, ("CIU 20"), and Joseph Mickley, (Doc. No. 91); (2) a motion for summary judgment filed on behalf of defendant Jeffrey Karpen, (Doc. No. 93); and (3) a cross-motion for summary judgment filed on behalf of the plaintiffs, Brandon Colon and Maria Jacqueline Disen–Colon, (Doc. No. 96).

### I. PROCEDURAL HISTORY

On November 25, 2002, the plaintiffs, proceeding *pro se,* filed the instant action. (Doc. No. 1). After having been directed to do so by the court, (Doc. Nos. 4, 12, 14), on April 8, 2003, the plaintiffs filed a counseled amended complaint which set forth claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. §§ 1400–1487; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101. (Doc. No. 17).

In considering motions to dismiss the plaintiffs' complaint, the undersigned issued a report dated November 18, 2004, in which it was recommended that the individual claims against defendants Mickley and Karpen for alleged violations of the ADA and Section 504 of the Rehabilitation Act be dismissed. In all other respects, it was recommended that the motions be denied. (Doc. No. 58). By order dated December 13, 2004, the report of the undersigned was adopted and the instant action was remanded for further proceedings. (Doc. No. 59).

On July 29, 2005, a motion for summary judgment was filed on behalf of defendants CIU 20 and Mickley, (Doc. No. 91), along with a statement of material facts, (Doc. No. 91, Attachment), and a supporting brief, (Doc. No. 92).

Also on July 29, 2005, a motion for summary judgment was filed on behalf of defendant Karpen, (Doc. No. 93), along with a supporting brief, (Doc. No. 94), and statement of facts, (Doc. Nos. 99).

On the same day, a motion for summary judgment was filed on behalf of the plaintiffs, (Doc. No. 96), along with a statement of facts, (Doc. No. 98), and a supporting brief, (Doc. No. 102).

On August 1, 2005, supporting exhibits were filed by the plaintiffs, (Doc. No. 100), as well as defendants CIU 20 and Mickley, (Doc. No. 101).

On August 20, 2005, the plaintiffs filed a consolidated brief in opposition to the defendants' motions for summary judgment. (Doc. No. 103).

On August 22, 2005, defendant Karpen filed a reply to the plaintiffs' statement of facts and a brief in opposition to the plaintiffs' motion for summary judgment. (Doc. Nos. 104, 106). On the same day, defendants CIU 20 and Mickley filed a brief in opposition to the plaintiffs' motion for summary judgment, (Doc. No. 105).

On September 2, 2005, defendants CIU 20 and Mickley filed a reply brief in support of their motion for summary judgment. (Doc. No. 109).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court has stated that:

" ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her

case with respect to which she has the burden of proof."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* The moving party can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Id.*

## IV. DISCUSSION

As set forth in the court's prior report on this matter, in their amended complaint, the plaintiffs allege that the minor plaintiff, Brandon Colon, ("Brandon"), is a

student with a disability,[1] who has resided within the Pocono Mountain School District, ("District"), at all times relevant to this action.

On September 11, 2000, the plaintiffs allege that the District initiated a multidisciplinary evaluation, ("MDE"), of Brandon, which resulted in the production of a comprehensive evaluation report, ("CER"), dated September 23, 2000. In the CER, it was concluded that Brandon's lack of success in the classroom was directly linked to his behaviors. As such, Brandon was found eligible for special education due to the existence of a serious emotional disturbance.

Based upon the CER, the plaintiffs allege that an individual education program, ("IEP"), was developed for Brandon which included one annual goal and three short-term instructional objectives that addressed Brandon's behavior. According to the plaintiffs, the IEP did not contain a behavior management plan.

On September 26, 2000, the plaintiffs allege that Brandon was placed at the Barrett Elementary Center within the District, which he attended until approximately February 6, 2001. Brandon was then assigned to the Pocono Mountain Elementary Center North. During this entire time, the plaintiffs allege that Brandon exhibited serious behavior problems which included banging his head, slapping his face, threatening and hitting other students, throwing furniture, and leaving the class without permission. As a result, the plaintiffs allege that Brandon was subjected to the use of passive restraints by school district personnel.

On or about September 27, 2002, the District conducted a psychiatric evaluation of Brandon, performed by Dr. Martha Turnberg, which recommended that Brandon's placement be changed to a partial hospitalization program for the purpose of addressing his academic, behavioral and emotional needs.

On October 16, 2001, an interagency meeting was convened for the purpose of arranging Brandon's transfer to the partial hospitalization program operated by the defendant CIU. The plaintiff was subsequently placed in the program on October 24, 2001.

During Brandon's placement in the CIU partial hospitalization program, the plaintiffs allege that he continued to exhibit disruptive behaviors, including verbal and physical abuse of others and self-injurious behaviors. Between his initial admission into the program and December 11, 2001, the plaintiffs allege that Brandon was repeatedly subjected to punishment for behavior which was a manifestation of his disability, including the use of physical restraints, placing him in a "time out room" for an entire day, and depriving him of benefits generally available to students admitted to the program, such as hot lunches, bathroom privileges and regular breaks. According to the plaintiffs' amended complaint, these actions were not taken in accordance with an individualized behavior management plan.

On or about December 11, 2001, Brandon's mother was informed by CIU personnel that Brandon was to be immediately discharged from the program, and that his placement was immediately changed to a "homebound" placement. The plaintiffs allege that his change in placement was implemented without adherence to the procedural requirements of the IDEA, 20

1. The plaintiffs allege that Brandon has been identified as a student with emotional disturbance. (Doc. No. 17, ¶ 1).

U.S.C. §§ 1414–1415, which require notice to the parents, the opportunity to participate in an IEP meeting, the right to object to any proposed change in placement and to maintain the pendent placement during any due process hearing and subsequent appeals.

The plaintiffs allege that defendant CIU and defendant Mickley, the Executive Director of CIU, failed to assure that employees of the agency refrained from discrimination against Brandon on the basis of his disability, by failing to provide appropriate training and support for staff of the partial hospitalization program who worked with Brandon, and by failing to assure that the CIU adopted diplomatic policies and procedures to assure that Brandon's right to remain free from such discrimination was not violated.

The plaintiffs further allege that defendant CIU operates on the basis of a policy, practice or custom that allows students such as Brandon to be subjected to punishment on the basis of disabilities in violation of their rights under the IDEA and Chapter 14 of the Regulations of the Pennsylvania Department of Education, and allows the parents of such children to be deprived of their due process rights as provided by said laws.

Upon information and belief, the plaintiffs allege that defendant Mickley knew or should have known that Brandon's rights under the IDEA, Pennsylvania Regulations and United States Constitution were being violated during his admission to the partial hospitalization program and failed to take corrective action.

The plaintiffs' amended complaint alleges that defendants Berry and Karpen subjected Brandon to punishment for behavior that was a manifestation of his disability by placing him in a "time out room" for an entire day, subjecting him to physical restraint, and depriving him of privileges generally due to students enrolled in the partial hospitalization program. The plaintiffs allege that such actions were taken in violation of the plaintiffs' rights under the IDEA, § 504 of the Rehabilitation Act, and the ADA.

The plaintiffs allege that Brandon's right to remain free of discrimination on the basis of his disability and to receive appropriate programming for his behavioral symptoms was clearly established at all times pertinent to this complaint. As a result of the defendants' actions and omissions, the plaintiffs allege that Brandon suffered severe emotional distress, physical injuries, and was deprived of the benefit of appropriate educational programming, causing him to lose educational opportunities and resulting in an increase in the severity of his disability.

The plaintiffs have brought the instant action seeking monetary damages on the basis of the above allegations.

## A. MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS CIU 20 AND MICKLEY

As the record now stands, all of the causes of action set forth by the plaintiffs in their amended complaint remain against defendant CIU 20. With respect to defendant Mickley, the IDEA and § 1983 claims brought against him in his individual and official capacities remain.

In their motion for summary judgment, defendants CIU 20 and Mickley initially argue that they are entitled to summary judgment because the plaintiff has failed to state a cause of action under the IDEA. To this extent, the defendants argue that: (1) CIU 20 is not the entity responsible for providing FAPE; (2) the plaintiff has failed to exhaust administrative remedies under the IDEA; and (3) the plaintiff,

Maria Jacqueline Diesen–Colon, cannot bring an individual claim under the IDEA. The defendants seek dismissal of the plaintiffs' amended complaint on these grounds. (Doc. No. 92, pp. 3–8).

The plaintiffs challenge the defendants' argument that CIU 20 is not the entity responsible for providing Brandon with FAPE. To this extent, the plaintiffs argue that this same claim was previously raised and addressed by the court in its November 18, 2004, report. The plaintiffs argue, therefore, that the issue is barred by the "law of the case doctrine." (Doc. No. 103).

The defendants do not dispute that they previously raised this argument in support of their motion to dismiss the plaintiffs' amended complaint, but take issue with the plaintiffs' reliance on the "law of the case" doctrine, as that term is defined.[2] The defendants further argue that, even if the doctrine could be applied to this action, it would not preclude the court from reconsidering its previous position. (Doc. No. 109, pp. 1–3).

In previously addressing the defendants' argument that CIU 20 is not the entity responsible for providing FAPE, this court previously found that CIU 20 was an entity which could be held liable, in conjunction with the school district, for providing FAPE to the plaintiff. (Doc. No. 58, pp. 7–11). To the extent that the defendants disagreed with that finding, they could

have filed objections to the report. They did not do so. Finding no plain error or manifest injustice relating to this court's decision, the District Judge adopted the report in its entirety. (Doc. No. 59). While the "law of the case" doctrine, as that term is defined, does not technically apply to the instant action, the court finds no basis to revisit the issue on the defendants' motion for summary judgment and stands by its prior decision.

Defendants CIU 20 and Mickley next argue that the plaintiffs' IDEA claim should be barred by their failure to exhaust administrative remedies. Specifically, the defendants argue that the plaintiffs failed to seek due process against CIU 20 for any alleged failure to implement the school district's IEP and, instead, proceeded only against the school district. (Doc. No. 92, pp. 8–10).

This claim was also considered in the court's previous report. The court found that because the plaintiffs are seeking monetary damages, which are not available in IDEA proceedings, exhaustion under the IDEA would be futile. On this basis, the court determined that the exhaustion requirement did not bar the plaintiffs' claims.[3] (Doc. No. 58, pp. 20–21). Again, the defendants did not object to this determination. The court finds no basis on which to revisit the issue and stands by its prior decision.

**2.** "Law of the case" is defined as the doctrine holding that a decision rendered in a former appeal of a case is binding in a later appeal; an earlier decision giving rise to the application of this doctrine. *Black's Law Dictionary* 893 (7th ed.1999).

**3.** The court notes that in their brief in opposition to the plaintiffs' motion for summary judgment, the defendants again raise the issue of exhaustion citing to this District's case of *Falzett v. Pocono Mountain School District,* 150 F.Supp.2d 699 (M.D.Pa.2001), for the proposition that exhaustion of administrative

remedies is not excused simply because parents are seeking monetary damages. Upon review, *Falzett* is clearly distinguishable from the instant action. In *Falzett* the court required exhaustion because the plaintiff, in addition to monetary damages, sought relief which an administrative tribunal could have provided. The court resisted the temptation to reach any broader conclusion with respect to the exhaustion of administrative remedies in an IDEA action. *See Falzett,* 150 F.Supp.2d at 706.

Next, the defendants CIU 20 and Mickley argue that Maria Jacqueline Disen–Colon cannot bring an individual claim under the IDEA as the parent of the minor plaintiff.[4] (Doc. No. 92, pp. 10–12).

The plaintiffs have not addressed or otherwise challenged this claim in their brief in opposition to the defendants' motion for summary judgment. As such, the claim is deemed unopposed. *See* Local Rule 7.6. The defendants' motion for summary judgment should, therefore, be granted to the extent that the plaintiff, Maria Jacqueline Disen–Colon, attempts to assert a cause of action under the IDEA in her own right.[56]

Defendants CIU 20 and Mickley next argue that the plaintiffs have failed to state a cause of action under § 1983. To this extent, the defendants argue that any liability pursuant to § 1983 is predicated upon a violation of the IDEA and, therefore, must fail for the same reasons as the IDEA cause of action. (Doc. No. 92, pp. 12–14).

As discussed above, the court has found that the IDEA claim brought on behalf of Brandon is not barred as against CIU 20.[7] As such, he should also be permitted to proceed with his § 1983 claim premised on the IDEA violations. However, to the extent that the court has found that the plaintiff, Maria Jacqueline Disen–Colon, has no standing to bring an IDEA claim in her own right, her § 1983 claim premised on the IDEA violation should also be dismissed. In addition, because the claims brought by the plaintiff, Maria Jacqueline

Disen–Colon, under § 504 of the Rehabilitation Act, and the ADA are premised on violations of the IDEA, these claims are also deficient and should be dismissed. *See Irene B. v. Philadelphia Academy of Charter School,* 2003 WL 24052009 *5 (E.D.Pa.).

The defendants CIU 20 and Mickley next argue that defendant Mickley is entitled to summary judgment on the IDEA and § 1983 claims which remain against him based upon the doctrine of qualified immunity. (Doc. No. 92, pp. 14–15).

■ As noted in this court's previous report, the defense of qualified immunity may be advanced by school officials alleged to have violated the IDEA. *See Matula,* 67 F.3d at 499 (citations omitted). This defense, however, only applies to individuals acting in their individual capacities. *Id.* (citing *Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). The § 1983 claims against the individual defendants in their official capacities are equivalent to claims against the government entity itself and may not be defended against on the basis of qualified immunity. *Id.*

In considering a defense of qualified immunity, the court must first determine whether the plaintiffs have alleged a constitutional or statutory violation. *Id.* If so, the defendant "will nevertheless not be liable if '[his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow*

---

4. The court notes that this argument was not previously raised in conjunction with the defendants' motion to dismiss the plaintiffs' amended complaint.

5. For the record, in considering the merits of the defendants' claim, the court has reviewed the caselaw cited to by the defendants and finds their argument to be well-taken.

6. The court notes that the plaintiff retains standing to bring the instant action on behalf of her son. *See Irene B. v. Philadelphia Academy of Charter School,* 2003 WL 24052009 *5 (E.D.Pa.).

7. As the defendants have separately discussed the claims brought against defendant Mickley, the court will address those claims, in turn.

v. *Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

With respect to defendant Mickley, the plaintiffs have alleged the following in their complaint:

8. Defendant Joseph Mickley, Ph.D., is the Executive Director of the Colonial Intermediate Unit 20, and, as such, has the responsibility of assuring that children who are provided special education and related services by the I.U. are provided with the educational services and procedural protections to which they are entitled under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–1487, and under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)(2).[8]

\* \* \* \* \* \*

31. Defendant IU 20 and Joseph Mickley, Ph.D., the Executive Director of defendant I.U. 20, failed to assure that employees of the agency refrained from discrimination against Brandon on the basis of his disability, by failing to provide appropriate training and support for staff of the partial hospitalization program who worked with Brandon, and by failing to assure that the IU 20 adopted and (sic) diplomatic policies and procedures to assure that Brandon's right to remain free from such discrimination was not violated.

\* \* \* \* \* \*

33. Upon information and belief, defendant Mickley knew or should have known that Brandon's rights under the IDEA, Pennsylvania regulations and United States Constitution were being violated during his admission to the partial hospitalization program and failed to take corrective action.

(Doc. No. 17).

Because the plaintiffs' complaint alleges statutory violations by defendant Mickley, the court must address the second prong of the qualified immunity defense.

"[T]o defeat a qualified immunity defense in an IDEA action, a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather, a plaintiff must demonstrate 'that the particular actions taken by defendants were impermissible under law established at that time.'" *Matula,* 67 F.3d at 499–500 (citations omitted).

In response to the allegations set forth in the plaintiffs' complaint, the defendants have provided a statement of material facts, supported by various documentation which indicate that George Makovich of CIU 20 was the director in charge of the partial hospitalization program at all relevant times. (Doc. No. 91, ¶ 33; Doc. No. 101, Ex. 5, pp. 9–10). Defendant Mickley did not have any direct involvement with the plaintiff's program. (Doc. No. 91, ¶ 34; Doc. No. 101, Ex. 5, p. 17). Defendant Mickley did not know Brandon until the instant action was filed, and did not become aware of the due process hearings involving Brandon until after they occurred. (Doc. No. 91, ¶ 32; Doc. No. 101, Ex. 5, pp. 14–16). The plaintiffs never met defendant Mickley. (Doc. No. 91, ¶ 36; Doc. No. 101, Ex. 2, p. 113).

In response to the defendants' materials, the plaintiffs simply argue, without citation to the record or any other support, that "[a]s the Director of the CIU at the time

---

8. As previously discussed, the court has already found that defendant Mickley cannot be held liable under § 504 of the Rehabilitation Act. (Doc. Nos. 54 & 59).

that Brandon was enrolled there, he oversaw the implementation of the unlawful policies that led to the violation of plaintiff's rights." (Doc. No. 103, p. 12).

■ Thus, although the plaintiffs' complaint generally alleges that defendant Mickley violated the Brandon's rights under the IDEA, the record before the court does not demonstrate that defendant Mickley took any particular actions or, for that matter, was required to take any actions with respect to Brandon. It follows then that the plaintiffs have not established that the actions or inactions of defendant Mickley were impermissible under the law established at the time. Therefore, defendant Mickley is entitled to qualified immunity under *Matula,* and the defendants' motion for summary judgment should be granted with respect to the plaintiffs' claims under the IDEA and § 1983 against defendant Mickley in his individual capacity.

Moreover, the defendants CIU 20 and Mickley argue that the claims brought against defendant Mickley in his official capacity should be dismissed as they are redundant of the claims brought against CIU 20. The plaintiffs have not addressed or otherwise challenged this argument in their brief opposing the defendants' motion for summary judgment. Therefore, the defendants' argument is deemed unopposed pursuant to L.R. 7.6, and the defendants' motion for summary judgment should be granted to the extent that the plaintiffs attempt to set forth a claim against defendant Mickley in his official capacity.[9]

The defendants CIU 20 and Mickley next argue that the plaintiffs' ADA and § 504 claims against CIU 20 are "subsumed" by the IDEA count because those claims are nothing more than "restatements of the alleged IDEA violations." (Doc. No. 92, pp. 15–17).

■ With respect to this argument, the Third Circuit has found that "the failure to provide a free appropriate public education violates IDEA and therefore could violate § 504." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 253 (3d Cir. 1999). *See also Matula,* 67 F.3d at 492–93; *J.M. v. Kingsway Regional School District,* 2005 WL 2000179 (D.N.J.)(defendants denied summary judgment on argument that the plaintiff's § 504 claim was essentially the same as the plaintiff's IDEA claim). Therefore, the provisions are not exclusive of each other and the defendants' motion for summary judgment should be denied on this basis.

Finally, defendants CIU 20 and Mickley argue that they are entitled to summary judgment because the plaintiffs cannot state a cause of action for punitive damages under § 1983, the ADA, § 504 or the IDEA against a municipality or government officials in their official capacity. (Doc. No. 92, pp. 17–18). The plaintiffs concede this fact, but argue that they are entitled to seek punitive damages against the individual defendants in their individual capacity. (Doc. No. 103, pp. 14–15). Because the court has found that defendant Mickley is entitled to qualified immunity on the claims against him in his individual capacity, the motion for summary

---

9. The court notes for the record that official capacity actions are redundant where the entity for which the individuals worked itself is named. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As such, the plaintiffs' claims against the individual defendants in their official capacities should dismissed because the CIU 20 is also named in each surviving claim where individual defendants are named.

judgment filed on behalf of defendants CIU 20 and Mickley should be granted in its entirety with respect to the plaintiffs' claims for punitive damages.

## B. MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT KARPEN

In his motion for summary judgment, defendant Karpen renews his argument that he is not a proper party to the instant action and that the settlement agreement entered into between the minor plaintiff's parents and the school district bars the instant action. (Doc. No. 94, pp. 3–4).

As discussed above with respect to the arguments raised by defendants CIU 20 and Mickley, these issues were ruled upon by the court in its November 18, 2004, report and recommendation. (Doc. No. 58). Defendant Karpen did not object to the findings in the report. By order dated December 13, 2004, the court adopted the report in its entirety. The court sees no reason to revisit these arguments and stands by its prior decision. Therefore, defendant Karpen's motion for summary judgment should be denied with respect to these claims.

Defendant Karpen next argues that the plaintiffs have failed to state a claim under § 1983. To this extent, defendant Karpen argues that the plaintiffs have failed to establish any constitutional violations. Moreover, based upon his argument above that he is not amenable to suit under the IDEA, defendant Karpen argues that the plaintiffs' § 1983 claim must also fail to the extent that it is based upon a violation of the IDEA. (Doc. No. 94, pp. 4–7).

 Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States. Section 1983 does not cre-

ate any new substantive rights, but only provides a remedy for the violation of a federal constitutional *or* statutory right conferred elsewhere. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433, (1979)(emphasis added).

Upon review of the plaintiffs' materials, contrary to defendant Karpen's argument, the plaintiffs are not basing their § 1983 claim upon any violation by defendant Karpen of their constitutional rights either by way of a substantive due process claim or an excessive force claim. Instead, the plaintiffs specifically state that their § 1983 claim is based upon defendant Karpen's violations of the IDEA. Because the court has previously found that the plaintiffs' IDEA claim can proceed with respect to defendant Karpen, his motion for summary judgment should be denied to the extent that he argues that the plaintiffs have failed to set forth a § 1983 claim against him.

Next, defendant Karpen argues that he is entitled to qualified immunity. To this extent, defendant Karpen claims that the plaintiffs have not cited to any clearly established "law" which he is alleged to have violated. Instead, defendant Karpen argues that the plaintiffs have only alleged that he has violated the Pennsylvania Department of Education regulations and the CIU 20 policies. At most, defendant Karpen argues that these regulations and policies serve as a guide or resource and do not constitute any "laws." (Doc. No. 94, pp. 7–9).

With respect to this argument, in order to implement the requirements of the IDEA, the Commonwealth of Pennsylvania, through the Department of Education, promulgated the Pennsylvania Special Education Regulations and the Pennsylvania Special Education Standards set forth at 22 Pa.Code Chapter 14. In *Geis v. Board of Education of Parsippany–Troy Hills,*

774 F.2d 575 (3d Cir.1985), the Third Circuit found that the state standards for educational opportunity for handicapped students are incorporated into the IDEA,[10] and are therefore enforceable in the federal courts. *Id.* at 580–81. In doing so, the court stated:

"... we find that the incorporation of state standards is explicit in the Act. As noted by the Ninth Circuit in *Honig*,[11] *supra.*—upon which we relied in *Everett*[12]—a 'free appropriate public education' is defined under the Act as special education and related services that, *inter alia*, 'meet the standards of the state educational agency.'" 20 U.S.C. § 1401(18)(B). In *Honig* this was held to include the California standards for seismic safety of schools. 736 F.2d at 545. We think it even more clearly applies to a state's own standard of educational opportunity for handicapped children. (citations omitted). By this catchall provision, federal law incorporates any state standards that go beyond the minimum standards of the Act ... *Id.*

■ Therefore, the plaintiffs' allegations that defendant Karpen violated the provisions of the Pennsylvania regulations by punishing Brandon for behavior that was a manifestation of his disability and using restraints on the minor plaintiff despite the fact that his IEP did not contain any behavioral management plan and no IEP meeting was convened to consider the appropriateness of the plaintiff's program are, in essence, allegations of violations of the IDEA. Therefore, the plaintiffs have cited to a clearly established law which defendant Karpen is alleged to have violated, and defendant Karpen's motion for summary judgment should be denied on this basis.

In the alternative, without any reference to the record, defendant Karpen argues that the actions taken against Brandon, as alleged by the plaintiffs, including the use of passive restraint, placement of Brandon in a time-out room for an entire day, and depriving Brandon of the benefits generally available to students admitted to the program, such as hot lunches, bathroom privileges and regular breaks, were for Brandon's safety, the safety of others, or the protection of property. Defendant Karpen points to no evidence in the record, however, that these actions were taken in accordance with an individualized behavior management plan or that they were used not as punishment for behavior which is a manifestation of Brandon's disability, as alleged by the plaintiffs. These claims, if established by the plaintiffs, constitute violations of the Pennsylvania regulations, and as a result, the IDEA, which were clearly established at the time of the incidents in question. As a result, there is a genuine issue as to whether the alleged actions of the defendant were in violation of clearly established laws and the defendant's motion for summary judgment should also be denied on this basis.

Finally, defendant Karpen argues that punitive damages against him are not appropriate as there is no evidence in the record which would support a theory that he acted with reckless indifference. (Doc. No. 94, p. 9).

Punitive damages are appropriate when the alleged wrongful acts of the defendant reflect either bad motive or reckless indifference to the rights of the plaintiff. *Irene*

---

10. Formerly the known as the Education of the Handicapped Act, ("EHA"), 20 U.S.C. §§ 1400–1461 (1982).

11. *Students of California School for the Blind v. Honig*, 736 F.2d 538 (9th Cir.1984).

12. *Everett v. Schramm*, 772 F.2d 1114 (3d Cir.1985).

*B. v. Philadelphia Academy Charter School,* 2003 WL 24052009, *14 (E.D.Pa.2003)(citing *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Keenan v. City of Philadelphia,* 983 F.2d 459, 469–70 (3d Cir.1992) (quoting *Bennis v. Gable,* 823 F.2d 723, 734 (3d Cir.1987) as holding that "punitive damages in § 1983 cases are available where the defendant's have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.' ")).

Here, a reasonable juror could conclude that the facts alleged, if proven, could support a claim that the defendant's actions constituted a reckless indifference to Brandon's rights, which precludes the entry of summary judgment on the issue of punitive damages at this time. Therefore, defendant Karpen's motion for summary judgment should be denied with respect to the issue of punitive damages.

### C. CROSS–MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF THE PLAINTIFFS

#### 1. Plaintiffs' Request for Summary Judgment with Respect to Defendant CIU 20

In their motion for summary judgment, the plaintiffs initially argue that they are entitled to summary judgment on the § 1983 and IDEA claims set forth against defendant CIU 20.[13][14] (Doc. No. 102, pp. 6–18).

In order to establish a claim for municipal liability pursuant to § 1983, a plaintiff must allege and prove that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The plaintiff may establish the requisite causal link: (1) by demonstrating that the municipal entity caused the violation through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); or (2) by demonstrating that the alleged constitutional violations were caused by a custom or usage of the municipality which has "the force of law by virtue of the persistent practices of the [municipal] officials," *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Here, to establish a municipal policy, the plaintiff relies upon CIU 20's Student Discipline Policy, which defendant Karpen testified was, in fact, in effect when Brandon Colon attended the CIU 20. Although the defendants argue that this policy cannot be considered because it was

---

**13.** As discussed above, the court has found that defendant Mickley is entitled to qualified immunity with respect to the claims brought against him in his individual capacity and that any claim brought against him in his official capacity is redundant of the claims brought against the defendant CIU 20. Therefore, any claims with respect to defendant Mickley raised by the plaintiffs in their

motion for summary judgment will not be discussed herein.

**14.** The court notes that, in light of it's previous finding that the defendant CIU 20 is a proper party to an action brought pursuant to the IDEA and § 1983, the plaintiffs have spent an inordinate amount of time in their supporting brief discussing this same issue.

only a "general discipline policy," it is a policy which was officially in effect at CIU 20 at the relevant time nonetheless. Relevant portions of this policy, as referenced by the plaintiffs, provide that behaviors that CIU 20 deems "inappropriate" will "... not be tolerated." In fact, many of the behaviors provided for in the discipline policy are the types of behaviors that Brandon exhibits as a result of his disability, (i.e., emotional disturbance). For example, the discipline policy lists "[a]busive or belligerent verbal assaults of staff" as "... not associated with the exceptionality in question ..." As such, the policy directs that certain behaviors are not to be considered by staff members as a manifestation of the child's disability. The discipline policy further provides that, in confronting such behaviors which are not a manifestation of disability, staff members are to "[a]dminister corporal punishment immediately according to I.U. Student Disciplinary Policy." The plaintiff argues that these are the provisions which led defendant Karpen to take the actions against Brandon which violated the Pennsylvania regulations and, as a result, the IDEA. The provisions of the Student Discipline Policy coupled with the actions of defendant Karpen are enough to create a question of fact as to whether there was an affirmative link between the CIU 20's disciplinary policy and the violations to which the plaintiffs allege Brandon was subjected. Therefore, there is a material question of fact as to the CIU 20's liability on the § 1983 claim, and the plaintiff's motion for summary judgment should be denied in this respect.

For the reasons set forth above with respect to the IDEA and § 1983 claims, the plaintiffs also argue that they are entitled to summary judgment on their § 504 and ADA claims. (Doc. No. 102, pp. 18–19).

The Third Circuit has noted that the requirements imposed by § 504 of the Rehabilitation Act substantially duplicate those provided under the IDEA. *W.B. v. Matula,* 67 F.3d 484, 492–493 (3d Cir.1995) (noting that "[t]here appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition"). Section 504 of the Rehabilitation Act prohibits any federally funded program from discriminating against persons with disabilities. To this extent, § 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a). To establish a violation of § 504, the plaintiffs must establish that: (1) Brandon has a disability; (2) Brandon is "otherwise qualified" to participate in school activities; (3) CIU 20 receives federal financial assistance; and (4) Brandon was excluded from participation in, denied the benefits of, or subject to discrimination at school. *W.B. v. Matula,* 67 F.3d at 492 (citations omitted). The plaintiffs need not establish that CIU 20 intended to discriminate in order to prevail. *Id.*

Furthermore, the ADA prohibits discrimination against a person with a disability by reason of such disability. 42 U.S.C. § 12132. Generally, the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA. *Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 279 (3d Cir.1996).

In this case, the court has already found that material issues of fact exist with respect to the plaintiffs' IDEA claim thereby precluding summary judgment. Because the requirements of § 504 and, in turn, the ADA duplicate those of the IDEA, the

court recommends that the plaintiffs' motion for summary judgment be denied with respect to these claims as well.

In opposing the plaintiffs' § 504 and ADA claims, defendant CIU 20 simply relies on the argument provided in support of its own motion for summary judgment, (i.e., that these claims are subsumed into the IDEA claims). In denying CIU 20's motion for summary judgment, the court has already found that this is not the case.

Defendant CIU 20 further argues that the plaintiffs' motion for summary judgment should be denied, generally, for several reasons. (Doc. No. 105). Initially, defendant CIU 20 argues that the plaintiffs' motion should be denied because the plaintiffs failed to support their statement of material facts with references to the parts of the record which support the statements in violation of L.R. 56.1. The defendant argues, therefore, that the court should disregard the plaintiffs' statement of material facts and summarily deny the motion for summary judgment. (Doc. No. 105, pp. 3–4).

With respect to this argument, L.R. 56.1 requires that a party filing a motion for summary judgment also file a separate statement of material facts containing numbered paragraphs and citations to the record. This rule was drafted to create a simple means through which the parties could identify for the court the relevant factual disputes in connection with a summary judgment motion. Here, while the plaintiffs have failed to reference the record in their statement of facts, they have referenced the record, at least to a certain extent, in their supporting brief. Moreover, at this juncture of the proceedings, the court declines to grant the drastic remedy suggested by the defendant and completely disregard the plaintiffs' materials and summarily dismiss their motion for summary judgment. However, the court does note that the plaintiffs' failure to comply with the Local Rules has made it more difficult for the court in reviewing the plaintiffs' motion.

The defendant CIU 20 also argues that *res judicata,* or claim preclusion, applies to administrative proceedings barring this court from determining whether the defendants denied Brandon a FAPE for the period in question. (Doc. No. 105, pp. 5–6).

▪▪▪ To the extent that the defendant questions this court's ability to make a substantive determination with respect to a claim that had already been addressed by an administrative agency, Supreme Court authority provides that judicially unreviewed state administrative determinations are not entitled to preclusive effect on IDEA claims later filed in federal court. *See Patricia P. v. Board of Educ. of Oak Park,* 8 F.Supp.2d 801 (N.D.Ill.1998)(citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *University of Tenn. v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)(confirming nonpreclusive effect of unreviewed administrative proceedings in Title VII claims); *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)(holding that unreviewed state administrative proceedings have no preclusive effect on claims brought under the Age Discrimination in Employment Act)). *See also JSK v. Hendry County School Board,* 941 F.2d 1563 (11th Cir.1991)(holding that unreviewed state administrative IDEA hearings have no preclusive effect on the federal court system); *I.D. v. Westmoreland School District,* 788 F.Supp. 634 (D.N.H. 1992)(same).

Defendant CIU 20 further argues in response to the plaintiffs' motion for summary judgment that, while the Third Cir-

cuit has indicated that damages are an available remedy under § 1983 for violations of the IDEA and directly under the Rehabilitation Act in *Matula*, it also expressed a preference for compensatory education over compensatory damages. *W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir. 1995). Despite the defendant's argument, the Third Circuit has nonetheless provided that compensatory damages are available and the plaintiffs should be permitted to seek those damages pursuant to § 1983 and the Rehabilitation Act.

### 2. Plaintiffs' Request for Summary Judgment with Respect to Defendant Karpen

The plaintiffs also argue that they are entitled to summary judgment on the § 1983 and IDEA claims brought against defendant Karpen. (Doc. No. 102, pp. 6–18).

As set forth above, there are genuine issues of material fact with respect to the § 1983 and IDEA claims set forth against defendant Karpen. On this basis, the plaintiff's motion for summary judgment should be denied as well.[15]

On the basis of the foregoing,

**IT IS RECOMMENDED THAT:**

(1) the motion for summary judgment filed on behalf of defendants CIU 20 and Mickley, **(Doc. No. 91)**, be **GRANTED IN PART AND DENIED IN PART** as discussed above;

(2) the motion for summary judgment filed on behalf of defendant Karpen, **(Doc. No. 93)**, be **DENIED** in its entirety as discussed above;

(3) the cross-motion for summary judgment filed on behalf of the plaintiffs,

**(Doc. No. 96)**, be **DENIED** in its entirety as discussed above; and

(4) the instant action be set down for trial.

---

15. The court notes that the plaintiff also seeks summary judgment against defendant Karpen on the ADA and § 504 claims. As discussed previously, these claims have been dismissed with respect to defendant Karpen. Therefore, the plaintiff's motion for summary judgment should be denied in this respect.